STATE

v.

Thomas J. McDOWELL.

No. 94–688–CA.

Supreme Court of Rhode Island.

Oct. 29, 1996.

Jane McSoley, Asst. Attorney General, Terrence Donnelly and Aaron Weisman, Providence, for Plaintiff.

Catherine Gibran, Asst. Public Defender and Paula Rosin, Asst. Public Defender, for Defendant.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on the appeal of the defendant, Thomas J. McDowell, from a judgment of conviction of nine counts of second-degree child molestation. The defendant was sentenced to concurrent terms of thirty years on each count, ten years to serve and twenty years suspended with probation. On appeal, the defendant argued that he was denied his right to present a full and fair defense because the trial justice erroneously excluded the testimony of three witnesses and abused her discretion by removing a juror for cause and by exempting the mother of a complaining witness from the court's sequestration order. For the reasons stated below, we deny and dismiss the appeal. A summary follows with additional facts presented as necessary in the analysis of the legal issues.

### Facts and Procedural History

In February 1989, defendant lived in West Greenwich, Rhode Island, with his wife, Eliz- abeth McDowell, and their two children, ten-year-old Mandy and one-year-old Joshua. The defendant and his wife worked weekend evenings and often hired babysitters, whom we shall refer to as HM, CM, RM, and KS. Over time, HM, CM, and RM became frequent visitors to the McDowell home even at times when their babysitting services were not required.

On the morning of February 12, 1989, RM told her stepmother, Cheryl Morgan, that she had slept at the McDowell house the previous night where she had been awakened by defendant, who was reaching under her clothing to touch her breasts and buttocks. Later that day, RM related the same account to her mother, Alice Morgan, who then accompanied her daughter to the Hope Valley State Police Barracks, where RM gave a statement detailing defendant's alleged sexual contact with her.

Meanwhile, Cheryl Morgan questioned her then-six-year-old-daughter HL, who also spent considerable time at the McDowell home, about whether defendant had ever touched her improperly. When HL indicated that defendant had engaged in such behavior, Cheryl Morgan took her daughter to the State Police Barracks, where HL recounted incidents of sexual contact by defendant. Shortly afterward, CM, HM, and KS came forward with their own allegations. All three girls gave statements to the State Police in which they claimed that defendant had in the past touched their breasts and/or buttocks.

On May 12, 1989, August 4, 1989, and September 14, 1989, defendant was charged in two informations and one indictment with nine counts of second-degree child molestation and one count of first-degree child molestation, in violation of G.L.1956 §§ 11–37–8.1 through 11–37–8.4. On November 1, 1989, the trial justice ordered the cases consolidated for trial. During the trial, the trial justice granted defendant's motion for a judgment of acquittal on one count of second-degree child molestation and on the first-degree count, amending the latter charge to the lesser included offense of second-degree child molestation.

A jury found defendant guilty of nine counts of second-degree child molestation, following which verdict defendant was sentenced to thirty years on each count, twelve years to serve and eighteen years suspended with probation. On February 17, 1993, however, this Court reversed the judgment of conviction and remanded the case for a new trial because testimony by an alleged victim of an uncharged sexual assault by defendant was erroneously admitted into evidence and testimony by defendant's son was erroneously excluded. *State v. McDowell*, 620 A.2d 94 (R.I.1993).

The case was heard by a second jury over several days in February 1994. At trial HM, CM, and RM acknowledged that with the exception of the conduct with which he was charged, defendant was "nice" to them. Each of the three girls testified, however, that over time defendant's behavior took on increasingly sexual overtones and eventually culminated in sexual contact. Babysitter KS testified that when she babysat at the McDowells one evening, upon his return home, defendant touched her breasts while telling her she was "beautiful and sexy," and HL testified that defendant had touched her genital area on several occasions and that defendant had placed her hand on his own genitalia. The defendant's wife, several other relatives, and a former babysitter, Jennifer Vucci (Vucci), presented testimony on defendant's behalf.

On February 25, 1994, the jury returned guilty verdicts on all nine counts of second-degree child molestation. On March 8, 1994, the trial justice denied defendant's motion for a new trial. Following his sentencing on April 21, 1994, defendant filed this appeal pursuant to G.L.1956 § 9–24–32.

### Trial Justice's Removal of a Juror for Cause

■ On February 22, 1994, after both parties declared themselves satisfied with the composition of the jury, a thirteen-member panel was sworn in and the trial proceeded. On February 23, 1994, at the conclusion of testimony by KS, the state rested its case. At that point, juror No. 106, Mark Ferri (Ferri), informed the court that during KS's testimony, he recognized for the first time the name of defense witness Vucci and suspected that he may have worked with Vucci's father approximately five or six years previously. The prosecutor questioned Ferri concerning whether he would have a problem evaluating Vucci's testimony fairly and impartially if Vucci were called to testify by the defense. At the conclusion of his examination, the prosecutor advised the court that he saw insufficient reason to excuse Ferri for cause, and Ferri remained on the jury.

Following closing arguments but before the jury was instructed, the state moved to strike Ferri for cause, pursuant to Rule 24(c) of the Superior Court Rules of Criminal Procedure. The prosecutor argued that circumstances had changed since Ferri first came forward. Specifically, the state contended that Vucci had given testimony not provided by the defense in discovery, that defense counsel had made Vucci the focal point of his closing argument, that Vucci had aligned herself in an obvious manner with the defense (sitting with defendant's family at trial), and that Vucci had "stormed out" of the courtroom during the state's closing argument. The prosecutor asserted that, given the unanticipated importance of Vucci's testimony and the equivocation expressed by Ferri when the trial justice inquired whether he could evaluate Vucci's testimony impartially, it would be unfair to allow the risk that Ferri would be prejudiced against the state. The defendant objected to the state's request and argued that granting the motion would effectively allow the state to choose a jury after the close of evidence. The trial justice granted the state's motion and excused Ferri for cause, observing that "defendant's constitutional right to have twelve jurors deliberate this case will be retained and preserved." On appeal, defendant argued that the trial justice abused her discretion by removing Ferri because no legitimate cause for removal existed.

In respect to jurors, Rule 24(c) provides that "the court for cause may excuse any of them from service provided the number of jurors is not reduced to less than twelve." Rule 24(a), which governs the examination of prospective jurors, suggests that grounds for

removal for cause exist when a "juror is related to a party, or has any interest in the case, or has expressed or formed an opinion or is sensible of any bias or prejudice therein." *Accord* G.L.1956 § 9–10–14. "[I]t is well-settled in this jurisdiction that the issue of whether a juror is disqualified due to bias, prejudice or interest is left to the discretion of the trial justice." *State v. Berberian*, 118 R.I. 413, 419, 374 A.2d 778, 781 (1977).

In the instant case, the trial justice correctly noted that Ferri was, at best, ambivalent about his ability to consider Vucci's testimony without bias. Our own review of the record revealed substantial uncertainty in Ferri's answers to questions concerning his impartiality. For example, when asked whether he would have any problem evaluating Vucci's credibility fairly, Ferri responded:

"It might if, you know, 'cuz I know Mike so I don't know, you know, being his daughter, it might, you know, I don't know. You know. To be—* * *—to be fair, it would be hard to listen to her up here and knowing her father, you know, I have known him, it's not like I don't know him. I know him. But to make a decision, it might—I don't know. I don't know. I hate to get through here—if she did come here, I don't know if she would—to hear it, and then in my mind, change while I'm over there—You know what I'm trying to say?"

Such equivocation by Ferri clearly supported a finding of bias and thereby provided a legitimate cause for removal, pursuant to Rule 24(c). Moreover, our review of the record revealed that in the course of the trial Vucci's testimony became more critical as defense counsel made repeated references to Vucci. In fact, the defense concluded by asking the jury to "look at [defendant] partially through the eyes of Jennifer Vucci." Thus, given the significance of Vucci's testimony and Ferri's dubious ability to assess Vucci's testimony impartially, the trial justice did not abuse her discretion in excusing Ferri for cause.

The defendant clearly had the indisputable right to be tried by twelve impartial jurors, but he did not have the right to be tried by any particular juror. Because defendant's case was ultimately deliberated by a panel of twelve jurors, defendant was afforded the right to trial by an impartial jury.

## Trial Justice's Exclusion of Testimony by Defense Witnesses

The theory pursued by the defense at trial was that a group of troubled girls from dysfunctional homes had conspired to fabricate the charges against defendant in order to garner support and sympathy from their own families. On appeal, defendant argued that the trial justice improperly excluded or restricted the testimony of three defense witnesses who would have presented evidence probative of the complainants' motivation for making false allegations against him. The defendant contended that he was thus denied his constitutional right to present a full and fair defense. We address the admissibility of the testimony of each of the witnesses separately.

*Joan Harris*

■ In pretrial discovery defendant submitted that Joan Harris (Harris), defendant's next-door neighbor, would testify to the "dysfunctional family situations" of the complaining witnesses, relying on her "observations as a neighbor," her "involvement in the community," and her "numerous conversations" with Cheryl Morgan. The state objected to the admission of Harris's testimony, contending that her opinions on the dysfunction of the victims' home lives were irrelevant and were not based on personal knowledge. The trial justice found that defendant had failed to establish that Harris had personal knowledge of the complainants' family situations and excluded Harris's testimony.

Rule 602 of the Rhode Island Rules of Evidence provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." The trial justice has considerable discretion in determining whether a witness possesses the requisite personal knowledge, and this Court will not disturb a trial justice's ruling on such a question absent a clear abuse of that discretion. *State v. Ranieri*, 586 A.2d 1094, 1098–99 (R.I.1991).

Our review of the record revealed an acknowledgment by defendant that Harris could not detail the times and the substance of specific conversations with Cheryl Morgan but would testify on the basis of a "general ongoing experience, an exchange of information" between herself and Cheryl Morgan. At a pretrial hearing, defendant further conceded that with one exception Harris could not testify to any specific incidents involving the complainants and their families but rather to "incidents of basic dysfunction." Moreover, the one specific incident that Harris allegedly witnessed was itself an observation based on hearsay. Thus, the trial justice did not abuse her discretion by excluding Harris's testimony on the basis of Harris's lack of personal knowledge.

*Jennifer Vucci*

■ The trial justice restricted Vucci's comments on the complainants in this case to statements "based on personal observation or experience." Because of that restriction defendant was unable to explore conversations that Vucci had had with RM and CM about problems in their respective homes. On appeal, defendant argued that he had been thereby precluded from eliciting information probative of the complainants' motivation for making false accusations against him.

It is our conclusion that the trial justice properly excluded evidence that was based on "unfounded opinion or hearsay statements." Moreover, our review of the record revealed that the trial justice granted defendant extensive latitude in his examination of Vucci, allowing testimony about her relationship with the complainants, her observations of defendant's treatment of the complainants, and CM's home life. We are persuaded that Vucci's testimony regarding CM's family life, as well as evidence elicited from RM on cross-examination concerning RM's own difficulties at home, negates any claim that defendant was prejudiced by the restriction of Vucci's testimony.

*Ira Gross, Ph.D.*

■ The defendant argued that his strategy entailed an attempt to establish, through the expert psychological testimony of Ira Gross, Ph.D. (Gross), a nexus between the instability in the complainants' families and their motivation to fabricate false accusations against defendant. Prior to trial, however, the state filed a motion *in limine* in respect to Gross's proposed testimony, and the matter was heard on *voir dire* by the trial justice.

At the *voir dire* hearing, Gross acknowledged that he had never spoken with defendant or with any of the complaining witnesses, family members, police officers, or counselors. Gross testified that his preparation for trial consisted solely of reading witness statements and the trial transcript of defendant's first trial. Relying solely on his review of those materials, Gross hypothesized that the complainants' allegations were the product of peer pressure and difficulty on the complainants' part in distinguishing their own experiences from those of their peers. He further posited that the accusations were rooted in the unstable home lives of the complainants, who looked to defendant for the emotional support lacking in their own families and then made false allegations against him in order to win attention and support in their own homes.

In a comprehensive bench decision, the trial justice granted the state's motion *in limine* and barred Gross from testifying. The trial justice ruled that Gross's testimony constituted "inappropriate subject matter for opinion testimony" under Rule 702 of the Rhode Island Rules of Evidence. Rule 702 provides that:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of fact or opinion."

In determining the admissibility of expert testimony pursuant to Rule 702, the trial justice considers "whether the subject matter is one for which expert testimony is appropriate." *State v. Morel*, 676 A.2d 1347, 1355 (R.I.1996) (citing *State v. Wheeler*, 496 A.2d 1382 (R.I.1985)).

This Court has held that testimony assessing the trustworthiness of witnesses constitutes inappropriate subject matter for expert

testimony because jurors are "perfectly capable of assessing the witness' credibility by weighing the inconsistencies and deficiencies elicited in cross-examination." *State v. Porraro,* 121 R.I. 882, 404 A.2d 465, 471 (1979). Because the assessment of a witness's credibility is not beyond the ken of the jury, the trial justice acts within his or her discretion in excluding expert testimony on this subject. *Id.* We have also noted that "there is a fine line between offering a witness to impeach a second witness' credibility, and offering a witness to opine that a second witness is not credible." *State v. Tavares,* 590 A.2d 867, 870 (R.I.1991). Expert testimony that falls into the latter category is inadmissible. *Id.* The trial justice concluded that "[s]trip[ped] to its core, Dr. Gross' testimony is pure opinion as to the credibility of the victims in this case" and, as such, "fits squarely within this forbidden territory." Moreover, the trial justice was

> "not convinced that opinions that [Gross] seems to profer [*sic*] in this case have a reliable basis in the knowledge and experience of his discipline or in fact. * * * I find no evidence that this methodology has been employed or accepted in the psychological community. Dr. Gross has never employed this approach before or written about it ever. He has never testified as an expert in a Court of law before a jury, about [a] sexual assault victim's credibility or the reliability of their statements of abuse, based on their prior-recorded statements alone and without benefit of the personal interview or observations. * * * In addition, [Gross] had the [*sic*] difficult time articulating the record facts and statements on which he based his opinions and when pressed, on many occasions, conceded that the underlying facts and data could be inaccurate."

It is well settled that the determination of the admissibility of expert testimony rests within the discretion of the trial justice, and this Court will not disturb a trial justice's finding on the admissibility of expert testimony absent an abuse of that discretion. *State v. Collins,* 679 A.2d 862, 867 (R.I.1996). We are of the opinion that on the facts of this case the trial justice clearly acted within her discretion in excluding Gross's testimony as improper subject matter for expert testimony.

### Exemption of Cheryl Morgan from the Court's Sequestration Order

Prior to trial, the trial justice granted defendant's motion to sequester the state's witnesses, with the exception of allowing Cheryl Morgan, the mother of eleven-year-old HL, to remain in the courtroom during HL's testimony. Because Cheryl Morgan was herself a witness for the state, defendant requested that she be required to testify before HL, in order to avoid "a witness who has not yet testified listening to the testimony of another witness." The trial justice was "not inclined to dictate the order of testimony" and instead ordered that Cheryl Morgan be excluded from the courtroom, unless the state was willing to call her to the stand before calling her daughter.

The state protested that defendant had failed to demonstrate that he would suffer any prejudice should Cheryl Morgan remain in the courtroom and testify after her daughter. The state contended that the testimony of the two witnesses would be less effective if Cheryl Morgan's testimony were presented first and argued that defendant could suffer harm only if Cheryl Morgan were to tailor her testimony to that of her daughter. The state asserted that defendant was protected against this "remote" possibility by the existence of Cheryl Morgan's police statement and her testimony from defendant's first trial, both of which could be used for impeachment purposes. The trial justice agreed that there was no significant risk of prejudice to defendant if Cheryl Morgan remained in the courtroom during HL's testimony and before her own.

Several days later, the trial justice, citing G.L.1956 § 12–28–9, ruled that Cheryl Morgan would be allowed to remain in the courtroom while HL testified. Section 12–28–9 is intended to provide child victims and witnesses "with additional rights and protection during their involvement with the criminal justice system." The relevant portion of the statute provides that child victims of felony offenses shall have the right:

"(2) To be accompanied at all investigative and judicial proceedings by a relative, guardian, or other person who will contribute to the child's sense of well being; unless it is determined by the party conducting the proceeding that the presence of the particular person would substantially impede the investigation or prosecution of the case;

"(3) To have all investigative and judicial proceedings in which the child's participation is required arranged so as to minimize the time when the child must be present;

"(4) To be permitted to testify at all judicial proceedings in the manner which will be least traumatic to the child, consistent with the rights of the defendant." Section 12–28–9.

The trial justice found that the statute created a presumption that HL had the right to be accompanied by her mother at trial, unless the court determined that the mother's presence would substantially impede the prosecution of the case or infringe upon defendant's rights. The trial justice determined that it was unlikely that Cheryl Morgan would tailor her testimony to that of her daughter and that, in any event, Cheryl Morgan's prior testimony was available for impeachment purposes. The trial justice further concluded that defendant had failed to demonstrate that allowing Cheryl Morgan to remain in the courtroom during HL's testimony would prejudice defendant, regardless of which of the two witnesses testified first. Consequently, the trial justice ruled that Cheryl Morgan could remain in the courtroom while HL testified, with the proviso that she could not visibly vouch for her daughter's credibility while in the courtroom or discuss HL's testimony with anyone else. In light of the statute's mandate that the court minimize the time that a child's presence may be required, the trial justice declined to hold an *in-camera* examination of HL. On appeal, defendant argued that the trial justice abused her discretion and prejudiced defendant by allowing Cheryl Morgan to remain in the courtroom during her daughter's testimony.

It is well settled that the decision to exclude witnesses from a courtroom during testimony at a trial lies within the sound discretion of the trial justice. On review, this Court will not disturb the trial justice's ruling on this matter, absent a clear abuse of discretion. *State v. Lassor,* 555 A.2d 339, 351 (R.I.1989); *State v. Rudacevsky,* 446 A.2d 738, 740 (R.I.1982); *State v. Mathias,* 423 A.2d 484, 486 (R.I.1980).

Our thorough review of the record revealed that the trial justice complied with the statutory provisions properly and considered the statutory rights of the child victim, the potential impact on the prosecution of the case, and the likelihood of prejudice to the defendant before exempting Cheryl Morgan from the court's sequestration order. Because there was no abuse of discretion, the trial justice's ruling will not be disturbed.

In summary, then, we deny and dismiss the defendant's appeal and affirm the judgment of the Superior Court, to which we return the papers in the case.

MURRAY, J., did not participate.