STATE

v.

Harold A. HAZARD.

No. 98–237–C.A.

Supreme Court of Rhode Island.

Dec. 3, 2001.

Jane M. McSoley, Aaron L. Weisman, Providence, for Plaintiff.

James T. McCormick, Providence, for Defendant.

Present: WILLIAMS, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

The defendant, Harold A. Hazard (defendant), appeals from a judgment of conviction for repeated sexual assaults upon a child. A Superior Court jury found the defendant guilty of committing five counts of child molestation sexual assault (four counts first degree, one count second degree) against his former girlfriend's daughter (victim) when the girl was eleven and twelve years old.

On appeal, defendant challenges various evidentiary rulings and the trial justice's mid-trial excusal of a juror from the case. Below, we take up each of defendant's specifications of error, reciting the pertinent facts as needed to resolve them as well as the reasons why we reject each of these contentions.

## I

### Sustaining Objections During Defendant's Cross-examination of the Victim's Mother

The defendant asserts that the trial justice committed reversible error during the trial when he sustained a series of prosecution objections to various cross-examination questions that his attorney posed to the victim's mother. On appeal, defendant suggests that he was trying to elicit statements that the victim allegedly made to her mother showing a racial animus against defendant. The defendant, who was a person of color, posits that the victim's racial prejudice toward him caused her to fabricate the sexual-assault charges. In support of this contention, defendant argues, his counsel tried to elicit that the victim made certain statements to her mother that revealed her race-based hostility toward defendant. In particular, defendant contends, because the state's hearsay objections were not well founded, the trial justice erred when he sustained them. The defendant maintains that any such statements that the victim may have made to her mother fell within the hearsay exception for the declarant's then-existing state of mind under Rule 803(3) of the Rhode Island Rules of Evidence.[1]

The first problem we have with this contention is that defendant failed to present this argument to the trial justice. Under our well-settled raise-or-waive rule, failure to make an argument to a trial justice waives the right to raise that argument on appeal. *See State v. Donato*, 592 A.2d 140, 141–42 (R.I.1991). This rule requires that, to be reviewable on appeal, all objections and allegations of error at the trial level must be raised initially and specifically with the trial justice. *State v. Pineda*, 712 A.2d 858, 861 (R.I.1998); *State v. Toole*, 640 A.2d 965, 973 (R.I.1994). When a trial justice sustains an objection to a line of inquiry on cross-examination and opposing counsel fails to make an offer

1. Rule 803(3) of the Rhode Island Rules of Evidence provides as follows:

"Then Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will."

of proof, fails to request any voir dire of the witness, and fails to articulate any reason why the court should reconsider its ruling, then that party cannot, on appeal, question the trial justice's ruling in sustaining the objection as reversible error. *State v. Medina,* 747 A.2d 448, 450 (R.I. 2000).

 Although the trial justice sustained various objections to questions that were put to the victim's mother on cross-examination, defendant never once indicated to the trial justice the purpose for which he sought to ·elicit the hearsay statements in question. Likewise, he made no offer of proof, he never asked the trial justice to allow him to voir dire the witness outside the presence of the jury, and he never mentioned the Rule 803(3) hearsay exception that he now relies upon to justify this line of questioning. Moreover, he never asked the trial justice to reconsider his rulings in light of that exception. Instead of letting the trial justice know the purpose for which he was asking these questions, what evidence he was seeking to adduce, and the legal basis for admitting this evidence, defendant's attorney simply moved on to his next cross-examination question without even indicating what answers he expected to receive concerning the victim's alleged racial animus toward defendant. We hold, therefore, that he has failed to preserve his objection to these evidentiary rulings for our review on appeal.

 An exception exists to this raise-or-waive rule, however, for issues involving a basic constitutional right. To invoke that exception the party must show that the error was more than harmless, that a sufficient record exists to permit a determination of whether any error was committed, and that the failure to raise the issue at trial was based on a " 'novel rule of law that counsel could not reasonably

have known during the trial.' " *Cronan ex. rel. State v. Cronan,* 774 A.2d 866, 878 (R.I.2001) (quoting *State v. Donato,* 592 A.2d 140, 142 (R.I.1991)). In this case, defendant's Rule 803(3) argument does not qualify under the exception to the raise-or-waive rule.

 First, we are not persuaded that any error, if it existed, was more than harmless. Even if the trial justice's decision to limit cross-examination had been erroneous, it would not be reversible if the error was harmless beyond a reasonable doubt. *State v. Pettiway,* 657 A.2d 161, 164 (R.I.1995). This Court has adopted a test for determining harmless error that calls for consideration of the following factors: the importance of the witness's testimony; whether the testimony was cumulative; the presence or absence of evidence corroborating or contradicting the witness's testimony on material points; the extent of cross-examination otherwise permitted; and the overall strength of the prosecution's case. *See State v. Squillante,* 622 A.2d 474, 479 (R.I.1993) (adopting the test in *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674, 686–87 (1986)).

In this case, if the trial justice erred, the error was harmless beyond a reasonable doubt because defendant was able to elicit through both the mother and the victim herself considerable evidence indicating that the victim did not like defendant because of his race and that their rocky relationship reflected this fact. For example, the mother was asked about the nature of the relationship between her daughter and her boyfriend, and she characterized it as "rough," noting that their relations were sometimes good, sometimes bad. The mother specifically testified that the relationship between defendant and her daughter began to deteriorate after she was in a car accident in 1994; from

then on, she stated, the victim became "cocky and arrogant" toward defendant. They began to argue a great deal and the victim would "huff and puff," "slam things," and "roll her eyes up in the air" when defendant asked her to do chores around the house. When her mother corrected her behavior, the victim became hostile and accused her mother of taking defendant's side against her. Thus, the record shows that defendant was able to elicit the victim's alleged animus and resentment toward defendant. Furthermore, defendant's counsel was able to exploit this issue fully in closing argument. In our judgment, even if defendant had preserved his objections to the trial justice's rulings, the additional corroboration sought from the victim's mother was merely cumulative because it would have added little or nothing to the mix of information that the jury ultimately received on this subject.

■ Second, a sufficient record does not exist to permit a determination of whether defendant may have attempted to preserve this alleged error for review during one or more bench conferences with the court. Indeed, several bench conferences occurred in the middle of this questioning that were not recorded; thus, we have no basis to ascertain the substance of any discussion that occurred and whether defendant's counsel may have alerted the trial justice at that time to the asserted legal basis for his questioning. Third, and most obviously, this issue did not involve a " 'novel rule of law that counsel could not reasonably have known during the trial.' " *Cronan,* 774 A.2d at 878 (quoting *Donato,* 592 A.2d at 142). For these reasons, defendant is not entitled to rely upon the raise-or-waive exception.

Finally, it is not at all clear that the court sustained objections to all the questioning at issue on the grounds that it

called for inadmissible hearsay. For example, defendant challenges the following rulings:

"Q Did your daughter have an attitude about whether or not you should marry him?

"MR. SCIACCA: Objection.

"THE COURT: Sustained.

"Q Did your daughter ever indicate one way or other? Did she ever indicate an attitude? I am not asking you to tell me what she said—did she indicate an attitude about you two getting married?

"MR. SCIACCA: Objection.

"THE COURT: Sustained.

"Q I am going to ask you whether or not the fact that he is black was ever a subject of discussion at your house?

"MR. SCIACCA: Objection.

"THE COURT: Sustained as to form.

"Q Did you ever discuss with your daughter you marrying the defendant?

"A Yes.

"Q You did?

"A Yes.

"Q And how did she appear to you when you discussed marrying the defendant?

"MR. SCIACCA: Objection.

"THE COURT: Sustained."

These questions attempted to elicit how the victim's mother perceived the victim's state of mind or attitude when mother and daughter were discussing various subjects. The Rhode Island Rules of Evidence that exclude hearsay include an exception for a statement of a declarant's then-existing state of mind, emotion, sensation, or physical condition, regardless of the declarant's availability. *See* Rule 803(3). Although such a statement is admissible, it is not permissible for "the witness to relate any of the declarant's statements as to why he held the particular state of mind, or what

he might have believed that would have induced the state of mind." *State v. Bustamante*, 756 A.2d 758, 764 (R.I.2000) (quoting *United States v. Cohen*, 631 F.2d 1223, 1225 (5th Cir.1980)). Here, however, instead of trying to elicit the victim's own statements to reveal her then-existing state of mind, the questions sought to elicit the mother's conclusions about whether the victim "indicate[d] an attitude" and "how * * * she appear[ed] to you" when they were discussing the possibility of the mother's marrying defendant. As a result, the above-referenced questions were improper even to accomplish the unexpressed purpose that defendant now relies upon to overturn the trial justice's rulings.

## II

### Excluding the Defendant's Proclaimed Reasons for Attempting Suicide

██ In July 1996, the victim finally disclosed to her mother that defendant had been molesting her during 1993 and 1994. In response, the mother immediately decided to confront defendant. Enlisting her then-current boyfriend to accompany her, the mother proceeded to defendant's apartment and disclosed to him the reason for her early morning visit. After making various tearful admissions acknowledging his culpability for molesting the victim, defendant abruptly left the apartment. Later that same morning, the state police received a call to respond to the Veterans Cemetery in Exeter. There, a state trooper found a semiconscious defendant lying in the grass, bleeding from his slashed wrists. The defendant disclosed to the trooper that he had discarded the razor blade he had used to cut himself in a nearby trash receptacle. He also told the trooper that his truck was parked nearby,

at his parents' gravesite. There, the state trooper found a note in defendant's handwriting that said: "I am sorry for all the pain I caused. Please try to forgive me. Town Hall has a copy of my DD214. Hill Funeral Home has paperwork. Thank you." The note also contained a separate entry that said: "Grace [defendant's sister], have them correct the spelling on Ma and Dad's grave stone."

The state argued, without objection, that defendant's suicide attempt and note were evidence of his consciousness of guilt for having molested the victim. The defendant, on the other hand, took the position that he was merely despondent over the earlier deaths of both of his parents and his sister.

██ In its case in chief, the state introduced the suicide note the trooper found without an objection from defendant. On cross-examination, however, when defendant's attorney attempted to find out what defendant said to the trooper at the grave site,[2] the prosecution objected on the basis of *State v. Harnois*, 638 A.2d 532 (R.I. 1994) (holding that a defendant's self-serving statements to a police officer were inadmissible because the Rule 803(24) catchall hearsay exception cannot be used to prove material facts through affidavits or unsworn statements as a substitute for the defendant's own testimony). The defendant insists this was error. He asserts that these statements were admissible under Rule 803(3) as statements of the declarant's then-existing state of mind. As indicated earlier, however, to fall within the Rule 803(3) exception to the hearsay rule, the statement must be one showing the declarant's state of mind at the moment of the statement; but it does not include statements relating to the reasons why the declarant held that state of mind

---

**2.** According to the police report, defendant told the officer that he attempted suicide be-

cause he could not handle the deaths in his family and did not want to live.

or what might have induced it. *See Bustamante*, 756 A.2d at 764. Rule 803(3) must be limited to those declarations of condition—" 'I'm scared'—and not belief—'I'm scared because Galkin threatened me.' " *Cohen*, 631 F.2d at 1225. The statement defendant sought to elicit offered an explanation for defendant's state of mind and was therefore inadmissible.

▪ The defendant also suggests that his statement to the trooper fell into the "catchall" provision of Rule 803(24) because the conditions under which he made it gave it equivalent circumstantial guarantees of trustworthiness. Rule 803(24) [3] provides an avenue for trial justices to admit hearsay statements not covered by any of the exceptions listed in Rule 803 if they encounter new and unanticipated situations that demonstrate the same degree of trustworthiness as the specifically stated hearsay exceptions. *See* Advisory Committee's Notes to Rule 803, *Exception (24): Other Exceptions.* Furthermore, the rule requires the proponent of the exception to notify opposing counsel *prior* to trial for the statement to be admissible. Without even addressing the merits of the claim, defendant failed to show that he notified the state of his intention to use this exception to admit defendant's graveside declaration. But even assuming, arguendo, that defendant had notified the state as per Rule 803(24), the *Harnois* rule still barred the admission of this statement into evidence. *See Harnois*, 638 A.2d at 535.

▪ Moreover, defendant again failed to preserve this objection for appellate review because he did not alert the trial justice to the Rule 803(3) or (24) bases that he now urges as grounds for admitting the evidence. *See Pineda*, 712 A.2d at 861. Similarly, he made no offer of proof to the trial justice. *See Medina*, 747 A.2d at 450. Furthermore, any error here was harmless beyond a reasonable doubt. *See Pettiway*, 657 A.2d at 164; *Squillante*, 622 A.2d at 479. The defendant himself testified, and his lawyer argued to the jury, that the loss of his parents and job stress led him to try to kill himself. The defendant emphatically denied that his suicide attempt had anything to do with his supposed consciousness of guilt because of the victim's accusations. His former wife also supported his contention that his suicidal condition was based upon the loss of his parents. In any event, what defendant may have said to the state trooper at the cemetery would not have resolved the question of whether he was suicidal because of his parents' deaths, because of the recent child-molestation accusations, because of his consciousness of guilt for having molested the victim, or, most likely of all, because of some combination of all these factors. Indeed, defendant has failed to cite any prejudice from excluding the evidence of what he may have said at the gravesite to the state

---

3. Rule 803(24) provides:

"A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his or her intention to offer the statement and the particulars of it, including the name and address of the declarant."

trooper about his then-existing state of mind.

■ We have held that "the admission of evidence rests in the sound discretion of the trial justice and will not be disturbed absent a showing of an abuse of that discretion." *Graff v. Motta,* 748 A.2d 249, 252 (R.I.2000) (quoting *New Hampshire Insurance Co. v. Rouselle,* 732 A.2d 111, 113 (R.I.1999) (per curiam)). "An aggrieved party challenging the ruling of the trial justice additionally bears the supplemental burden of establishing that the questioned evidence was material and that its admission had an impermissible prejudicial influence on the decision of the factfinder." *Tinney v. Tinney,* 770 A.2d 420, 434 (R.I. 2001) (citing *Graff,* 748 A.2d at 252 and *Caranci v. Howard,* 708 A.2d 1321, 1325 (R.I.1998)). We are convinced that any error in excluding this evidence was harmless beyond a reasonable doubt.

### III

### Excluding Evidence of What the Victim's Mother Told Denise Warburton About the Telephone Conversation She Had with Her Daughter On July 7, 1996

■ The defendant's former sister-in-law, Denise Warburton, was a bartender at Norman's Restaurant in East Greenwich on July 7, 1996, when the victim's mother, a regular patron, entered the establishment. After Warburton testified that the victim's mother received a phone call and "that it was her daughter and she was crying," the prosecutor objected on hearsay grounds and the court sustained the objection. After the victim's mother ended the telephone call, Warburton asked her "what was wrong with her daughter." The prosecutor again objected and the court again sustained the objection. The defendant's lawyer then cautioned War-

burton: "Don't tell me what she said." He then asked Warburton whether she knew that the victim's mother had had a phone conversation with her daughter, but he warned her to "forget what she said to you."

Under these circumstances, defendant cannot assert reversible error on the grounds that the court improperly sustained objections to questions that sought to elicit what the daughter said to her mother in the telephone call. The defendant failed to articulate any grounds whatsoever to justify admitting this evidence, and actually appeared to agree with the court's ruling by instructing the witness to "forget" what the victim's mother had told her about the telephone conversation with her daughter. *See Medina,* 747 A.2d at 450. For these reasons, any objections to these rulings were not properly preserved.

■ Moreover, defendant made no offer of proof to show that he was attempting to elicit evidence showing the state of mind of either the victim or her mother relative to whatever they discussed that day in Norman's Restaurant and Bar during their telephone conversation. *See id.* "'The purpose of an offer of proof is to enable this court to determine the materiality, relevance, and competence of the evidence.'" *State v. Cote,* 691 A.2d 537, 541 (R.I.1997). Such offers "'[shall] be reasonably specific, rather than general, should include a statement of the facts to which the witness would testify, should indicate the purpose and object of the proof offered, and should establish that the evidence sought to be admitted is admissible.'" *Id.* at 542. "Absent that offer of proof, or some indication on the record of what counsel believed he could unearth, [this Court is] unable to perceive any abuse of discretion in the trial justice's ruling." *State v. Doctor,* 690 A.2d 321, 328 (R.I.1997).

## IV

### Exclusion of Statements Made By
### Defendant to His Ex-wife

██ Relying again upon Rule 803(3) as the basis for the admission of evidence he sought to elicit from his former wife, defendant argues that the trial justice committed reversible error in frustrating his attempts to show that on February 14, 1996—months before the victim's mother eventually confronted him in July with charges of child molestation—he already had planned for his own burial. But defendant's former wife testified that he was "devastated" by the deaths of his parents and sister in less than a year; that he was withdrawn, very depressed, and overwhelmed with grief. She also testified that he spoke about suicide in her presence, although he had never actually attempted it until July 8, 1996 (after the victim's mother confronted him about sexually abusing her daughter). Most importantly, for purposes of assessing this specification of error, defendant's former wife told the jury that she had a conversation with her former husband on February 14, 1996, that led her to believe that he viewed his own death as imminent. Thus, we conclude that any error on this score was harmless beyond a reasonable doubt.

██ In any event, the grounds for defendant's objections to the trial justice's evidentiary rulings during his former wife's testimony were raised for the first time on appeal. Because defendant never articulated his theory of admissibility to the trial justice, he has failed to preserve it for appeal. *See Pineda,* 712 A.2d at 861. Further, the evidence was cumulative and, therefore, any exclusion was harmless error, at best. *See Squillante,* 622 A.2d at 479.

## V

### The Court's Mid-trial Removal
### of a Juror

██ After defendant's former wife took the stand for the defense, a juror told the court that she believed she had played softball with this witness in a summer league. When asked about how this fact might affect her ability to evaluate the woman's testimony, the juror equivocated. She was unable to answer one way or the other about whether her previous contacts with the woman would play a role in how she decided this case.

The prosecution sought to excuse this juror because it would have exercised a peremptory challenge against her had it known at the outset of the trial about her previous contacts with defendant's former wife. After the prosecutor asked the trial justice to excuse the juror, defendant's lawyer responded "whatever the court says, I don't care." And when the trial justice excused the juror, defendant's lawyer added: "You are the judge, absolutely. It is okay, sure. Yes your honor."

On appeal, however, defendant attempts to sing a different tune. He suggests that the juror was improperly excused via the prosecution's unlawful exercise of a mid-trial peremptory challenge. Because he raised no objection to the trial justice's actions at the trial, defendant has waived any ability to challenge the excusal of this juror on appeal. *See Pineda,* 712 A.2d at 861. Indeed, his lawyer affirmatively indicated that whatever the court wished to do with the juror, he did not care about it. "It is okay, sure," is what the defense lawyer told the trial justice about the juror's excusal.

██ Although peremptory challenges are not generally available to challenge a juror after he or she has been selected as a petit juror, here, as in *State*

*v. McDowell,* 685 A.2d 252, 254–55 (R.I. 1996), the juror's equivocal responses to the court's inquiries about her ability to decide the case irrespective of her previous contacts with the defendant's former wife formed a sufficient basis to excuse her from the jury for cause. According to Rule 24(c) of the Superior Court Rules of Criminal Procedure, after a juror is sworn in and after opening statements, a juror may be dismissed only for cause.[4] Pursuant to Rule 24(a) removal for cause exists when "a prospective juror is related to a party, or has any interest in the case, or has expressed or formed an opinion or is sensible of any bias or prejudice therein." The determination of the disqualification of a juror for cause is left to the discretion of the trial justice. *McDowell,* 685 A.2d at 255 (holding that a juror's equivocal response to the trial justice's questions regarding the juror's ability to remain impartial—after the juror had realized midway through the trial that he knew the father of a witness—was evidence of that juror's bias justifying his removal for cause under Rule 24) (citing *State v. Berberian,* 118 R.I. 413, 419, 374 A.2d 778, 781 (1977)).

■■■■■ In any event, defendant has failed to show how he was prejudiced by the removal of this particular juror. *See Tinney,* 770 A.2d at 434. Thus, for example, he does not allege that the court replaced her with a biased or otherwise inadequate juror. The defendant was not entitled to have the charges against him adjudicated by any one particular jury or juror, only by a jury of his peers. Because defendant failed to preserve this issue for appellate review, failed to show how the court's ruling was erroneous, and failed to demonstrate how it caused him prejudice, we reject this argument as a ground for reversing his convictions.

## VI

## Defendant's Absence From the Chamber's Conference That Resulted in The Juror's Removal

■■■■■ The court's questioning of the juror about her having played softball in a league in which defendant's former wife was also a player took place in chambers outside the presence of the jury and defendant. The defendant now argues that he should have been present when this occurred and that his absence from the chambers conference denied him his constitutional right to be present at every stage of the trial. Once again, however, defendant never asserted at trial his alleged right to be present at this particular part of the proceedings. Although defendant's lawyer was present in chambers when the court questioned the juror, he never asked for his client to be present, nor did he object when the court proceeded to question the juror without his client being present. Moreover, defendant's lawyer expressly agreed to the juror's excusal despite defendant's absence from the conference.

■■■■■ Under the Sixth and Fourteenth Amendments, a criminal defendant has the right to hear everything the jury hears in order to protect himself. *State v. La Chappelle,* 424 A.2d 1039, 1043 (R.I.

---

4. Rule 24(c) of the Superior Court Rules of Criminal Procedure provides in pertinent part:

"If a juror is excused after he or she has been sworn but before any opening statement is begun, another juror may be impaneled and sworn in his or her place. All the jurors shall sit and hear the case, but the court for cause may excuse any of them from service provided the number of jurors is not reduced to less than twelve (12) or such other number stipulated to under Rule 23(b)."

1981) (citing *United States v. Johnson*, 129 F.2d 954, 958 (3rd Cir.1942)). Rule 43 of the Superior Court Rules of Criminal Procedure expands this constitutional right to grant the defendant the right to be present at every stage of trial.[5] *See also State v. Brouillard*, 745 A.2d 759, 766 (R.I.2000). This right, however, is not unlimited.

"The purpose of Rule 43 is to provide [the] defendant with the opportunity to be present at every stage of his trial. This certainly does not imply that [the] defendant has a right to be present at all occurrences after the impaneling of the jury but only those occurrences that concern the guilt or innocence of [the] defendant or affect his ability to defend against the charges against him." *La Chappelle*, 424 A.2d at 1046 (holding that the trial justice's in-chambers conference with the complainant "did not bear any reasonably substantial relationship to defendant's opportunity to defend against the offense charged, nor did his absence from the conference deny him a fair and just hearing on the charges before the trier-of-fact," *id.* at 1045).

■ Here, as in *Brouillard* and *La Chappelle*, the defendant had no right to be present because this was not a stage of the trial at which his guilt or innocence was being adjudicated. In any event, the defendant's failure to raise the issue at trial waived his right to challenge this procedure on appeal. *See Pineda*, 712 A.2d at 861.

5. Rule 43 of the Superior Court Rules of Criminal Procedure provides, in relevant part, as follows:

"The defendant shall be present at the arraignment and at the imposition of sentence, except as otherwise provided by these rules. The defendant shall be present at every stage of the trial, including the impaneling of the jury and the return of the verdict, except that the defendant may be excluded from the proceedings if, after appropriate warning, the defendant persists in conducting himself or herself in a manner so disorderly, disruptive, and disrespectful to the court that the trial cannot be carried on with him or her in the courtroom."

## Conclusion

For these reasons, we deny the appeal and affirm the judgment of conviction.