DECISION
This case is before this Court on Petitioner Harold Hazard's Application for Post-Conviction Relief. In October of 1997, a jury convicted Hazard of one count of first-degree child molestation sexual assault and four counts of second-degree child molestation sexual assault. After an unsuccessful appeal and the death of his trial counsel, Hazard now seeks reversal of his conviction on grounds of ineffective assistance of counsel at trial.
After consideration of the trial transcripts and exhibits, the decision of the Rhode Island Supreme Court affirming Hazard's conviction, his petition for post-conviction relief, the record from the evidentiary hearing on that petition, and the parties' memoranda and arguments, this Court denies Hazard's petition for post-conviction relief.
 I FACTUAL BACKGROUND
The facts relevant to the petition are culled from the Rhode Island Supreme Court's decision in State v. Hazard,785 A.2d 1111 (R.I. 2001), in which the Court denied Hazard's appeal from his conviction, as well as the 1997 trial record. From 1993 through 1994, Petitioner Hazard, a 43-year-old divorced father of three sons, was living with his then fiancée and her minor daughter, who was then between 11 and 12 years of age. During this time, Hazard was a *Page 2 
postal worker and his fiancée was employed as a waitress, working the evening shift three or four nights per week from approximately 4:30 p.m. to midnight, while Hazard babysat for her daughter. Hazard also cared for the young girl when his fiancée was hospitalized on two separate occasions, once in 1993 for over a week, and the second time in 1994 for at least two weeks.
When Hazard babysat, he began coming into the young girl's room after she showered and would rub her with lotion. The contact was originally limited to the young girl's back, but then Hazard began rubbing her breasts under her clothes and then her vagina. On three or four occasions, Hazard put his fingers into the girl's vagina. He also would kiss her breasts and lick her ears while showing her the location of her "horny spots." On other occasions, Hazard once penetrated the young girl's vagina with his tongue and once penetrated her anally with his penis. From 1993 through 1994, Hazard molested the young girl, in total, about 15 to 20 times.
The young girl displayed some resentment toward Hazard at the outset of his relationship with her mother. Eventually, however, the two became close, until 1994 when the girl's behavior toward Hazard changed and he no longer wished to babysit for her, forcing her mother to change her work schedule so that she could be home with her daughter during the evenings.
The young girl did not tell her mother or any other adult about Hazard's conduct during this period because she knew that her mother was in love with Hazard and because Hazard had threatened to kill himself if she did. The only person in whom she confided was her best friend. Eventually, the relationship between Hazard and his fiancée deteriorated, and he moved out in September of 1995. Earlier that same year, in March of 1995, Hazard's father had died. A few months after he moved out, in January of 1996, his mother and sister died. Thereafter, Hazard *Page 3 
became very depressed, even making funeral arrangements for himself in February of 1996 before eventually seeking treatment and counseling for his depression.
On July 7, 1996, the young girl disclosed to her mother that Hazard had touched her inappropriately. Later that same night, her mother went to Hazard's apartment and confronted him with her daughter's allegations. He became visibly upset, crying and shaking, and then apologized for what he had done, offering to help pay for any counseling the girl might need. Soon thereafter, Hazard left the apartment. Early the next morning, Trooper Pennington of the Rhode Island State Police found Hazard semi-conscious, with slashed wrists, laying in the grass near his parents' gravesite at the Veterans Cemetery in Exeter, Rhode Island. Trooper Pennington discovered the razor blade used by Hazard to cut his wrists and a note that Hazard had left in his vehicle in which he apologized for the pain he had caused, asked for forgiveness, and made reference to the funeral home which had his papers. He also had inscribed a note to his sister directing her to have the spelling of their parents' names on their gravestone corrected.
 II PROCEDURAL HISTORY
A grand jury indicted Hazard on September 12, 1996 on a five-count indictment, including one count of first-degree child molestation, in violation of R.I.G.L. § 11-37-8.1, and four counts of second-degree child molestation, in violation of § 11-37-8.3.See State of Rhode Island v. Harold Hazard, C.A. No. K1/96-458A (R.I. Super. 1996). After a trial by jury, it convicted Hazard on all five counts on October 6, 1997. Following this Court's denial of Hazard's motion for a new trial on October 23, 1997, it sentenced him on December 18, 1997 to forty years at the Adult Correctional Institutions, with twenty years to serve and twenty years suspended with twenty years probation. On the remaining four counts of second-degree child *Page 4 
molestation, this Court sentenced Hazard to thirty years at the Adult Correctional Institutions, with fifteen years to serve and fifteen years suspended with fifteen years probation, with the sentences on all counts to run concurrently. This Court also ordered Hazard to undergo sex offender, mental health and substance abuse counseling and to register as a sex offender as required by law. It further ordered Hazard to make restitution to the complaining witness for her counseling expenses. The late Charles J. Rogers, Jr. represented Hazard throughout his trial and at the sentencing hearing.
On December 18, 1997, following Rogers's death, Hazard privately retained new counsel, James McCormick, to represent him in connection with his appeal before the Rhode Island Supreme Court. The Supreme Court affirmed his conviction on December 3, 2001.See State v. Hazard, 785 A.2d 1111 (R.I. 2001). Through his new counsel, Hazard thereafter filed a motion to reduce his sentence which this Court heard and denied on May 10, 2002.
In September of 2003, again through his new counsel, Hazard filed this Application for Post-Conviction Relief asking that his conviction be vacated on grounds of ineffective assistance of counsel at trial. As Petitioner, Hazard claims that the trial errors committed by his late trial counsel, Charles J. Rogers, Jr., either singularly or cumulatively, were prejudicial to him and that, but for their commission, he would not have been convicted.
The bases for Petitioner's ineffective assistance of counsel claim are that his late trial counsel: (1) wrongfully, and without Petitioner's knowledge or consent, disclosed confidential psychiatric records to the State before trial — records which the defense did not offer into evidence in Petitioner's defense but which the prosecutor used to impeach Petitioner's trial testimony; (2) failed to use exculpatory evidence, such as police records and reports containing allegations that the complaining witness herself had committed acts of sexual assault and *Page 5 
molestation against other younger children, which could have impeached her trial testimony; (3) failed to object to the State's introduction of Petitioner's suicide note which the prosecutor argued was evidence of Petitioner's consciousness of guilt regarding the charged offenses; and (4) failed to object during the State's closing statement when the prosecutor remarked that Petitioner's suicide note evidenced his consciousness of guilt and engaged in many instances of improper vouching.
Additionally, Petitioner relies on the Rhode Island Supreme Court's decision in State v. Hazard for further examples of his late counsel's ineffective assistance. Petitioner contends that his trial counsel rendered ineffective assistance at trial by failing to preserve his objections to several of the trial justice's evidentiary rulings for appeal: (1) not permitting defense counsel to cross-examine the complaining witness's mother on issues of bias toward Petitioner; (2) not allowing defense counsel to attempt to elicit testimony regarding Petitioner's proclaimed reasons for attempting suicide; and (3) not admitting statements made by Petitioner to his ex-wife indicating that his suicide attempt was the result of pre-existing depression rather than consciousness of guilt.
The State filed an answer to Petitioner's Application for Post-Conviction Relief in April 2004, objecting to the Petitioner's request for relief and then supplemented its answer on May 30, 2006 to set forth its arguments in opposition to Petitioner's Application. In its answer, the State objects to Petitioner's Application for Post-Conviction Relief, arguing that he has failed to prove, under the dictates of Strickland v.Washington, 466 U.S. 668 (1984), that his trial counsel's performance at trial was constitutionally deficient or that, even assuming deficiency, he sustained prejudice. In addition, it contends that the decision of the Rhode Island Supreme Court with respect to Defendant's appeal is res judicata as to some or all of the Petitioner's *Page 6 
claims. At the request of Petitioner, this Court held an evidentiary hearing with respect to Petitioner's post-conviction relief application. Both parties filed memoranda, and this Court also heard oral argument regarding Petitioner's application.
 III STANDARD OF REVIEW
Under the Rhode Island Post-Conviction Relief Act, a person who has been convicted or sentenced for a crime and who claims that "the conviction or the sentence was in violation of the constitution of the United States or the constitution or laws of this state" may institute an action for post-conviction relief. R.I. Gen. Laws § 10-9.1-1(a)(1). The burden is on the petitioner to prove, by a preponderance of the evidence, the alleged instance or instances of ineffective assistance of counsel. Hazard v.State, 968 A.2d 886, 891-92 (R.I. 2009); Bleau v. State,968 A.2d 276, 278 (R.I. 2009); Brown v. State,964 A.2d 516, 526 (R.I. 2009); Palmigiano v. Mullen,119 R.I. 363, 374, 377 A.2d 242, 248 (1977). The Rhode Island Supreme Court has held that the appropriate procedure for asserting a Sixth Amendment challenge to the competency of counsel is not by direct appeal but rather by filing a petition for post-conviction relief under the Act. State v. Gibbons,418 A.2d 830, 839 (R.I. 1980); State v. Freitas,121 R.I. 412, 416-17, 399 A.2d 1217, 1219 (1979).
In reviewing a claim of ineffective assistance of counsel, our Supreme Court has stated that the "benchmark issue is whether `counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" Bustamante v. Wall,866 A.2d 516, 522 (R.I. 2005) (citing Toole v. State,748 A.2d 806, 809 (R.I. 2000) (quoting Tarvis v. Moran,551 A.2d 699, 700 (R.I. 1988))). Indeed, the Court should reject a claim of ineffective assistance of counsel "unless the attorney's representation [was] so *Page 7 
lacking that the trial became a farce and a mockery of justice. . . ." Pelletier v. State, 966 A.2d 1237, 1241 (R.I. 2009) (quoting State v. Dunn, 726 A.2d 1142, 1146 n. 4 (R.I. 1999)).
In evaluating claims of ineffective assistance of counsel, our Supreme Court follows the standard articulated in the seminal United States Supreme Court decision of Strickland v.Washington, 466 U.S. 668 (1984). See Hazard,968 A.2d at 891-92; Bustamante, 866 A.2d at 522. TheStrickland two-part test requires that a defendant show: (1) that counsel's performance was so deficient and that counsel made errors so serious that he or she was not functioning at the level guaranteed by the Sixth Amendment; and (2) that "such deficient performance was so prejudicial to the defense and the errors were so serious as to amount to a deprivation of the applicant's right to a fair trial." Brennan v. Vose,764 A.2d 168, 171 (R.I. 2001) (citing Strickland,466 U.S. at 687). A defendant raising an ineffective assistance of counsel claim must satisfy both parts of the Strickland test to prevail; unless he or she does so, "it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable."Simpson v. State, 769 A.2d 1257, 1266 (R.I. 2001) (quotingStrickland, 466 U.S. at 687).
In assessing the first part of the Strickland test, the performance of counsel is evaluated by determining whether that representation "fell below an objective standard of reasonableness." 466 U.S. at 688. "The performance proxy must be assessed in view of the totality of circumstances and in light of `a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Hazard,968 A.2d at 892 (quoting Strickland, 466 U.S. at 689). "Mere tactical decisions, though ill-advised, do not by themselves constitute ineffective assistance of counsel." Bustamante,866 A.2d at 523 (quoting Toole, 748 A.2d at 809). "A choice between trial tactics, which appears unwise only in hindsight, does not *Page 8 
constitute constitutionally-deficient representation under the reasonably competent assistance standard." State v. D'Alo,477 A.2d 89, 92 (R.I. 1984) (quoting United States v. Bosch,584 F.2d 1113, 1121 (1st Cir. 1978)).
In addition, "a single failure or omission on the part of privately retained counsel is unlikely to meet theStrickland threshold." Heath v. Vose,747 A.2d 475, 479 (R.I. 2000). When reviewing a claim of ineffective assistance of counsel, this Court thus should examine "the entire performance of counsel." Brown, 964 A.2d at 528; seealso Heath, 747 A.2d at 478 (court analyzed ineffective assistance of counsel claim based on the "totality of omissions" committed by defense counsel).
Even if a defendant is able to satisfy the first part of theStrickland test by showing that counsel's performance was objectively unreasonable considering all of the circumstances, the defendant then must go on to establish that counsel's performance resulted in serious prejudice that undermined his or her right to a fair trial. Strickland 466 U.S. at 694; Brown,964 A.2d at 527. Under this second part of the Strickland
analysis, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.
This second part of the test focuses on the reliability of the outcome of the proceeding. Thus, even if a defendant is successful in demonstrating that his or her counsel committed unreasonable errors, he or she still must be able to show that those errors "actually had an adverse effect on the defense," and not simply "some conceivable effect" since "virtually every act or omission of counsel would meet that test." Id. at 693. The United States Supreme Court has made clear that "an error by counsel, even if professionally unreasonable, does not warrant *Page 9 
setting aside the judgment of a criminal proceeding if the errorhad no effect on the judgment."Id. at 691 (emphasis added); see alsoBrown, 964 A.2d at 528 (when counsel's performance is "deficient in a number of respects, then the possibility is greater that an accumulation of serious shortcomings prejudiced the defendant to a sufficient degree to meet the Strickland
requirement") (internal citation omitted).
With these precepts in mind, "judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. InStrickland, the Court cautioned a defendant against "second-guess[ing] counsel's assistance after conviction or adverse sentence." Id. Further, the Court added, "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. A fair assessment of counsel's performance, therefore, "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id.
Recognizing the difficulties inherent in making such an evaluation, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. In any given case, "[t]here are countless ways to provide effective assistance . . . [e]ven the best criminal defense attorneys would not defend a particular client in the same way." Id.; cf. Engle v.Isaac, 456 U.S. 107, 133-34 (1982) (holding that the Constitution only guarantees criminal defendants a fair trial and a competent attorney; it does not ensure that the defense will recognize and raise every possible claim). Thus, the task for a court is to determine if a *Page 10 
defendant has met and carried his or her burden of showing that "the decision reached would reasonably likely have been different absent the errors." Strickland, 466 U.S. at 696.
 IV ANALYSIS A. Disclosure and Use of Petitioner's ConfidentialMental Health Records 1. Deficient Representation
Petitioner asserts that his counsel's performance was objectively unreasonable, so as to satisfy the first prong of theStrickland test, because he wrongfully and without Petitioner's knowledge or consent disclosed confidential psychiatric counseling records to the State before trial. Petitioner argues that, as a result of this disclosure, the Prosecutor was able to impeach Petitioner's credibility at trial, thus leading to his conviction on the child molestation charges.
At the evidentiary hearing on Petitioner's claim for post-conviction relief, Petitioner testified that, in response to his attorney's request, he signed a release form authorizing Harvard Pilgrim Healthcare to forward to his attorney his mental health counseling records from February 23, 1996 to December 19, 1996. He asserted that he only authorized the release of these records to his attorney because his counsel expressed concern about Petitioner's mental state in light of his suicide attempt. Petitioner further asserted that, in authorizing the release of the records to his counsel, he never consented to his attorney releasing them to the State. Petitioner testified that his attorney never had said anything to him about turning those records over to the State nor did he obtain Petitioner's authorization for their release. There is no question, however, that Petitioner's counsel turned over these records to the prosecutor before trial. Petitioner thus claims that his attorney did so wrongfully, without his knowledge or *Page 11 
consent, under circumstances where disclosure was not legally required because the State did not request discovery.
He next contends that his counsel compounded this error by not reviewing the records with Petitioner before trial to prepare him for cross-examination. The psychiatric records at issue contained notes taken by Petitioner's psychiatrist, Dr. Flikier, regarding Petitioner's depression and suicide attempt. A progress report signed by Dr. Flikier and dated October 22, 1996, although redacted in part, included a note that stated: "He [Petitioner] reports that he did give his girlfriend's daughter a bath and put some lotion [on her], but this was in front of the girlfriend." (Ex. Pet. 2.) On cross-examination, the prosecutor asked the Petitioner whether he had put lotion on the complaining witness, as she had described in her trial testimony. Petitioner claims that he was surprised and unprepared for the question and denied putting lotion on the complaining witness. (Trial Tr. vol. 2, 380:11-16, Oct. 3, 1997.) The State then effectively impeached his testimony with the psychiatric records produced to the prosecutor that referenced his practice of putting lotion on the victim, at which point Petitioner had to retract his denial. (Trial Tr. vol. 2, 380:19-381:25, Oct. 3, 1997.) Petitioner then tried, belatedly, to distance himself from the records by arguing that they did not reflect verbatim what he had told his therapist.
In addition, Petitioner argues that, if it was not error for his counsel to release his counseling records to the State, his counsel erred in not using them affirmatively to bolster his defense. He suggests that his trial counsel should have introduced or referred to these records in his direct examination of Petitioner to explain that Petitioner's suicide attempt was because of his depression over his family members' deaths and not because of his consciousness of guilt, as the State claimed. *Page 12 
The State responds that defense counsel's disclosure of the records to it was not ineffective or deficient, but merely tactical. Since a crucial aspect of Petitioner's defense was that his suicide attempt was the result of grief over the deaths of his close family members and not the result of being accused of molestation by the complaining witness's mother, it was necessary for defense counsel to release records to the prosecutor that would substantiate this defense. Thus, the State argues that the release of the records was a strategical decision on the part of defense counsel that was not objectively unreasonable.
Further, the State suggests that Petitioner was obviously and actively involved in every aspect of his defense and, therefore, his claim that he was unaware of and did not consent to the disclosure of the records to the State lacks credibility. Additionally, the State argues that Petitioner put his own mental health into issue when his attorney questioned him, on direct examination, about his depression and treatment. As a result, the State would have been entitled legally to request a subpoena from the Court for Petitioner's mental health records pursuant to the Health Care Confidentiality Act, R.I. Gen. Laws 1956 §§ 5-37.3-6(b)(1), 5-37.3-6.1(a).[1] *Page 13 
The State maintains, then, that it does not matter whether Petitioner gave his consent to the release of the records, because, under the Act, the State would have been entitled to the records by law following his direct examination.
With respect to Petitioner's argument that his attorney did not prepare him for cross-examination concerning those records, the State counters by noting the opportunities that Petitioner had to observe its opening statement and the trial testimony of the complaining witness about his putting lotion on her. According to the State, therefore, by the time Petitioner took the stand, he knew that an issue had been made about his having rubbed the complaining witness with lotion. He also knew, regardless of whether he had reviewed his psychiatric records in preparation for his testimony, that he had an obligation to testify truthfully under oath. The State argues that Petitioner chose to deny ever putting lotion on the complaining witness, thus becoming the author of his own troubles. Notwithstanding his denial, the prosecutor gave Petitioner the opportunity to explain the inconsistency between his trial testimony and the information contained in his physician's notes. Defense counsel, too, gave Petitioner the opportunity to address the inconsistency on re-direct examination. The State claims, therefore, that the Petitioner had a full and fair opportunity to resolve any inconsistencies in his testimony regarding his physician's note.
In addressing the Petitioner's arguments, this Court must begin with the Rules of Professional Conduct which govern the obligations and duties of a lawyer to his or her client as part of the attorney-client relationship. Under Rule 1.2, entitled "Scope of Representation," a lawyer is required to "consult with the client as to the means by which [the objectives of *Page 14 
representation] are to be pursued." The commentary to this rule states that the client has the ultimate authority to determine the purposes to be served by legal representation and that, within the limits of the law and the lawyer's professional obligations, a client also has a right to consult with the lawyer about the means to be used in pursuing those objectives. Yet, it is the lawyer who generally assumes responsibility for the legal and tactical issues at trial. See Commentary to Rules of Professional Conduct 1.2. Nonetheless, under Rule 1.4(b)(c), entitled "Communication," a lawyer is obliged to "keep a client reasonably informed about the status of a matter," and "shall explain to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." While an attorney cannot be expected to describe his or her trial strategy in detail, the guiding principle is that the lawyer should fulfill "reasonable client expectations for information consistent with the duty to act in the client's best interests." Commentary to Rules of Professional Conduct 1.4. Further, Rule 1.6 prohibits an attorney from disclosing confidential client information unless that client consents (except for certain disclosures that are impliedly authorized to carry out the representation, necessary to prevent the commission of certain crimes, or pertinent to certain disputes arising out of the attorney-client relationship).[2] *Page 15 
Disclosures of confidential medical information often become necessary when a defendant puts his or her mental and/or physical condition in issue as part of his or her defense. Section 5-37.3-6(b)(1); see also State v.Thornton, 800 A.2d 1016, 1042 (R.I. 2002) (generally held that a prosecutor's cross-examination of a mental health expert in a case raising an insanity or diminished capacity defense may properly use the defendant's previous convictions or other prior bad acts to test the expert's proffered opinion and credibility); State v.Boss, 490 A.2d 34, 26 (R.I. 1985) (explaining that the privilege of confidentiality does not apply and health care information can be subject to legal process "when an individual introduces his physical or mental condition . . . as an element of his claim or defense") (internal citation omitted). Even when a defendant places his or her health condition in issue, however, that does not mean that all of his or her confidential health care information should be disclosed or admitted into evidence. See People v. Carkner,213 A.D.2d 735, 737 (N.Y.A.D. 1995).
In Carkner, the Appellate Division of the New York Supreme Court held that although the defendant raised the issue of his identity and whether he was the person from whom a blood sample was drawn, thus "open[ing] the door" to the admission of his confidential health care information relevant to the identity issue, he did not "affirmatively put his physical or mental condition in issue so as to waive the physician-patient privilege with regard toall of the confidential information contained in the hospital records." Id. (emphasis added). As such, the Court found that the trial court erred in admitting certain confidential health care information over the defendant's objection. Id. Thus, a defendant waives the applicable privilege afforded to confidential health care information only as to the specific issues that he raises as part of his defense. *Page 16 
In the case at bar, assuming that Petitioner signed a release form providing blanket authorization for his mental health records to be transferred to his attorney, [3] this authorization did not grant his defense attorney carte blanche to use his client's confidential medical records to any end. Moreover, even if Petitioner had, in fact, consented to the disclosure of his confidential records to the State, defense counsel still should have been aware that he had no affirmative obligation to turn over all of the records absent a proper discovery request by the State or a court order or subpoena. See Super. R. Crim. P. 16.[4]
Petitioner's mental health records contain several notes — dated February, March, July, August, October, and November 1996 — made by Petitioner's psychiatrists, almost all of which relate to Petitioner's suicide attempt and his depression over his family members' deaths. Arguably, these records were relevant to Petitioner's bereavement defense and hence properly disclosed. However, one progress note, dated October 22, 1996 and signed by Dr. Flikier, while redacted in part, contains a statement regarding Petitioner giving his girlfriend's daughter a bath and putting lotion on her in front of the girlfriend. As this statement had nothing to do with Petitioner's defense, and as the State never requested discovery, there would have been no reason — legal or tactical — for defense counsel to have produced this statement to the prosecutor. It is more likely, therefore, that defense counsel's disclosure of the record — which gave the State great fodder for its direct case *Page 17 
and its cross-examination of the defendant at trial — was inadvertent, detrimental to the Petitioner, and thus, objectively unreasonable. See Strickland, 466 U.S. at 689.[5]
In addition, even assuming an inadvertent disclosure of Petitioner's mental health records without Petitioner's authorization or knowledge, there were other procedural devices available to, but not used by, defense counsel to minimize the harm to his client at trial. A lawyer "must make every effort practicable to avoid unnecessary disclosure of the [client's] confidences and secrets; to limit disclosure to those having the need to know the information; and to obtain protective orders or make other arrangements minimizing the risk of unnecessary disclosure."Crews v. Buckman Labs. Int'l Inc.,78 S.W.3d 852, 866 (Tenn. 2002). Here, defense counsel could have sought a protective order pursuant to Rule 16(f) of the Superior Court Rules of Criminal Procedure, the primary purpose of which is to ensure the "fullest possible presentation of the facts prior to trial" and to "eliminate surprise at trial." State v.Cianci, 496 A.2d 139, 143 (R.I. 1985) (quoting State v.Concannon, 457 A.2d 1350, 1353 (R.I. 1983)). Even where discovery requests are filed, a court, under Rule 16(f), may, on the motion of any party, "order that the discovery or inspection sought pursuant to this rule be denied, restricted or deferred, or make such other order as is appropriate." A protective order may be necessary to "protect a *Page 18 
number of interests by precluding disclosure of otherwise confidential information that may have untoward consequences wholly unnecessary to final preparation of the case for trial."Cianci, 496 A.2d at 144.
Here, once defense counsel disclosed all of Petitioner's psychiatric records to the prosecutor, he did not attempt to limit their use at trial by means of a protective order or other procedural device. A trial justice has the discretion to limit discovery and the use of evidence at trial only to the area(s) at issue and may order disclosure of information only if it finds such disclosure "necessary to a proper administration of justice." State v. McAbee,120 N.C. App. 674, 684 (N.C. App. 1995); see alsoMcGuire v. Superior Court for Los Angeles County,274 Cal. App.2d 583, 596 (Cal. App. 1969) (finding that discovery order requiring the disclosure of defendant's psychiatric records was appropriately limited to evidence of affirmative defense of diminished capacity). Defense counsel made no motion requesting such limited discovery nor did he move for redaction of the records by the trial court or a limiting instruction as to the content of the records.[6] Moreover, defense counsel made no request that the Court include a limiting instruction in its charge to the jury nor did he object to the charge given. (Trial Tr. vol. 2, 487:9-15, Oct. 3, 1997.)
Still further, defense counsel failed to object to the prosecutor's line of questioning of the Petitioner on cross-examination with respect to any of the content of his psychiatric records. When Petitioner took the stand at trial and was questioned by his attorney on direct examination, the issue of whether he put lotion on the complaining witness was never raised. Instead, defense counsel asked Petitioner about the effects that the deaths of his relatives had on him, whether he *Page 19 
sought treatment and help for his depression, and whether he had contemplated suicide during the period in question. (Trial Tr. vol. 1, 321:3-23:24, Oct. 1, 1997.) Once Petitioner placed his physical and mental state in issue during this direct examination, the prosecutor was free to inquire about and/or impeach Petitioner on cross-examination concerning that particular issue. The prosecutor's inquiry, however, went beyond the issue of Petitioner's state of mind and included questions regarding those statements in the psychiatric records relating to Petitioner's putting lotion on the complaining witness.
Yet, at no point during this deviation in the prosecutor's cross-examination did defense counsel object. Rule 611 of the Rhode Island Rules of Evidence limits the scope of cross-examination to "the subject matter of the direct examination." SeeState v. Benevides, 420 A.2d 65, 69 (R.I. 1980). While it is true that the permissible scope and extent of cross-examination rests in the sound discretion of the trial justice, "[i]n this jurisdiction cross-examination of a witness is generally limited in scope to matters testified to on direct examination."Id. at 69; see also Elliott B. Oppenheim, TheMedical Record as Evidence 642 (1998) ("[I]f the patient discloses information on direct examination, he will waive the privilege at least to the extent of direct examination."). Also permitted on cross-examination are "questions designed to explain, contradict, or discredit any testimony given by a witness ondirect examination, or to test his accuracy, memory, veracity, or credibility." Id. (emphasis added). Inquiries that "exceed the scope of the direct examination are objectionable."State v. Wright, 817 A.2d 600, 610 (R.I. 2003).
While the decision not to object may, at times, be "fraught with danger and may not be wise strategy," see Chandler v.State, 848 So.2d 1031, 1045 (Fla. 2003), in some circumstances a decision not to object to an otherwise objectionable remark may be made for strategic reasons. *Page 20 
 Id. at 1045. Yet, in over 50 pages of cross-examination by the prosecutor in the trial transcript, defense counsel objected only once, and this objection was to a question that did not involve the content of the Petitioner's psychiatric records. (Trial Tr. vol. 2, 389:15-18, Oct. 3, 1997.) While it may be true that the failure by counsel to object to a "single improper statement does not establish objective deficiency," seeU.S. v. Allison, 59 F.3d 625, 629 (7th
Cir. 1995), in this case, defense counsel neglected to object even once to several references by the prosecutor to the objectionable content of those records. Moreover, by failing to object, defense counsel did not preserve his client's right to direct review of this issue. See State v. Carvalho, 450 A.2d at 1104.
It is true, as the State argues, that regardless of whether Petitioner was aware of the content of the medical records that defense counsel disclosed to the prosecutor and regardless of whether defense counsel prepared Petitioner for cross-examination, Petitioner still had a duty to testify truthfully. The issue of Petitioner's credibility was one for the jury and the issue of whether Petitioner's conviction was proper was one for our Supreme Court to consider on appeal. However, the issues of whether defense counsel should have disclosed all of Petitioner's psychiatric records to the State in the first place and whether defense counsel should have objected to the prosecutor's cross-examination of Petitioner regarding the objectionable content of those records and better prepared his client for cross-examination regarding the content of those records are before this Court as part of Petitioner's claim of ineffective assistance of counsel and, therefore, merit consideration.
Based on the foregoing reasons, it is the view of this Court that defense counsel's performance in disclosing the portion of Petitioner's psychiatric records to the State involving the lotion incident without Petitioner's specific knowledge or consent and in failing to object to and prepare Petitioner for the prosecutor's cross-examination with regard to that aspect of the *Page 21 
records was constitutionally deficient. Counsel magnified these problems by not first introducing any counseling records on the direct examination of the Petitioner to buttress his defense that his suicide attempt had nothing to do with the molestation charges. To prevail on his claim, however, Petitioner also must show this Court that his counsel's deficient performance resulted in serious prejudice to him and undermined the fairness of his trial.
 2. Prejudice
If and when an applicant is able to demonstrate that counsel's performance was deficient under the Strickland test, the applicant then bears the burden of proving that prejudice actually resulted from the deficient performance. 466 U.S. at 668; Chalkv. State, 949 A.2d 395, 399 (R.I. 2008). It is under this second prong of the Strickland test, which carries a high burden of proof, that many ineffective assistance claims fail.
To prove prejudice under the second part of theStrickland analysis, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. This part of the test focuses on the reliability of the outcome of the proceeding. The errors committed by defense counsel must be so serious and severe as to "warrant setting aside the judgment of a criminal proceeding."Id. at 691.
Petitioner presents a number of errors that were committed by defense counsel including the disclosure of Petitioner's mental health counseling records to the State (and, more specifically, the reference in those records to putting lotion on the complaining witness), the failure to prepare Petitioner for the questioning on that issue that ensued at trial, the failure to *Page 22 
use Petitioner's psychiatric records on direct examination of Petitioner to show that Petitioner's reason for attempting suicide was due to his depression over his family members' deaths, and the failure to object to the prosecutor's line of cross-examination regarding the lotion incident referred to in the records. While this Court agrees that these errors, especially when aggregated, were objectively unreasonable, it cannot say with reasonable probability that, but for these errors, the result of Petitioner's trial would have been different. Strickland, 466 U.S. at 694.
In reviewing the trial transcripts, there is strong testimony from the complaining witness, her mother, and her best friend to substantiate the jury's guilty verdict. At the conclusion of the trial, the trial justice instructed the jury that if it found the complaining witness's testimony to be credible, it could return a guilty verdict on that basis alone. (Trial Tr. vol. 2, 482:21-483:4, Oct. 3, 1997.) Defense counsel did not introduce any contradictory testimony to impeach the credibility of the complaining witness or the other witnesses. While defense counsel attempted to proffer evidence of racial animus on the part of the complaining witness in an effort to discredit her testimony, the jury could reasonably infer, from the timing of Petitioner's acts of molestation against the young girl and her disclosure of those acts to her mother, that she was not harboring any racial animus toward Petitioner at the time that she made the allegations.
In Angell v. State, the defendant filed an ineffective assistance of counsel claim against his trial and appellate attorney outlining numerous tactical mistakes allegedly made during the course of his murder trial. 454 A.2d 709 (R.I. 1983). The most significant testimony produced at trial, in addition to the circumstantial evidence centering on the victim's death, came from the defendant's wife. Id. Although the defendant proposed several tactical approaches that his trial counsel did not employ, the court was satisfied that those proffered maneuvers would not have affected the outcome of the case. Id. The basis for the Court's conclusion was the testimony of *Page 23 
the defendant's wife. The Court was convinced that this testimony had been the "heart of the state's presentation . . . Nothing suggested by present counsel . . . would have shaken or diminished the force of that testimony. . . . [The defendant's wife]'s testimony made it virtually impossible for any defense counsel, however skillful, to defend [the defendant] successfully."Id. at 710.
Also, in Brown v. State, the petitioner sought post-conviction relief on the grounds of ineffective assistance by his trial counsel. 964 A.2d 516 (R.I. 2009). One of the petitioner's claims was that his defense counsel failed to object, on the ground of clergy privilege, to the testimony of the pastor of the church, which the defendant's family attended, regarding the victim's disclosure that the petitioner had sexually abused her.Id. at 537-542. The Supreme Court held that even if defense counsel's performance was deficient in this regard, there was no evidence that this error prejudiced the petitioner because "there was other compelling evidence of his guilt that was more than sufficient for the jury to convict [him] beyond a reasonable doubt."Id. at 541. This other compelling evidence included the petitioner's counselor's testimony, the petitioner's wife's testimony regarding petitioner's admissions to the counselor at a session in which she was present, and the victim's own testimony at trial about the abuse she experienced by the petitioner. Id. at 541-42. Based on these reasons, the Court was convinced that regardless of whether defense counsel erred in failing to object to the pastor's testimony, the petitioner had "failed to demonstrate that there [was] a reasonable probability that, but for [defense counsel]'s errors, the result of the trial would have produced a different result." Id. at 542.[7] *Page 24 
In the case at bar, the complaining witness's testimony also was the heart of the State's case. Her testimony was corroborated by the circumstances of its disclosure, the credible testimony of her mother and friend, and Petitioner's action upon being confronted with her allegations. Petitioner has failed to convince this Court that, even if the purported errors had not been made — namely, defense counsel had not disclosed and/or the State had not been permitted to use the objectionable mental health counseling records and he had prepared Petitioner for direct examination and cross-examination regarding any records used — the outcome of the case would have been different. The highly persuasive testimony of the complaining witness, corroborated by the testimony of other witnesses and evidence introduced by the State — as well as Petitioner's lack of credibility and a credible defense (separate and apart from his testimony regarding the lotion incident) — supports the jury's verdict and makes it unlikely that defense counsel's alleged errors prejudiced the Petitioner so as to undermine confidence in the outcome of his trial. Accordingly, Petitioner's claim of ineffective assistance of counsel connected with the disclosure and use of his confidential medical records must be denied.
 B. Defense Counsel's Tactical Decisions
Petitioner also raises several allegations of ineffective assistance of counsel that relate to tactical decisions by his attorney. These allegations include: (1) exclusion of evidence that the complaining witness had committed several assaults against younger children and reference, instead, to her alleged racial animosity toward Petitioner; (2) failure of defense counsel to object to the State's introduction and use of the suicide note as evidence of Petitioner's consciousness of guilt; and (3) failure of defense counsel to object during the State's closing argument to *Page 25 
remarks that Petitioner's suicide note was evidence of consciousness of guilt and to the Prosecutor's many instances of improper vouching.
The Rhode Island Supreme Court has made clear that "tactical decisions by trial counsel, even if ill-advised, do not by themselves constitute ineffective assistance of counsel."Brown, 964 A.2d at 533-534 (internal citations omitted);see also Strickland, 466 U.S. at 689 (ruling that a defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy'). In D'Alo, our Supreme Court explained that "a choice between trial tactics, which appears unwise only in hindsight, does not constitute constitutionally-deficient representation under the reasonably competent assistance standard."477 A.2d at 92 (quoting United States v. Bosch,584 F.2d at 1121). In any given case, "there are countless ways to provide effective assistance . . . [e]ven the best criminal defense attorneys would not defend a particular client in the same way." Strickland, 466 U.S. at 689. The quality of a lawyer's advice should not be judged "on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson,397 U.S. 759, 771 (1970). Thus, even if many reasonable lawyers would not have made the same decision as defense counsel did at trial, "no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Gordon v. United States,518 F.3d 1291, 1302 (11th
Cir. 2008) (emphasis added). When a court "can conceive of a reasonable motivation for counsel's actions, [it] will deny a claim of ineffective assistance." Id. at 1302. *Page 26 
 1. Exclusion of Evidence of Assaults/Use of Evidence of RacialAnimosity
Although defense counsel did not file for discovery, the State produced evidence to the defense, presumably in compliance with its obligations under Brady v. Maryland, 373 U.S. 83 (1963), that included police reports and reports from the Department of Children, Youth, and Families pertaining to alleged incidents of child molestation by the complaining witness against other younger children. At the pre-trial hearing on the State's motion inlimine to preclude admission of evidence regarding the complaining witness's alleged past acts of molestation of other younger children, defense counsel advised the Court that Petitioner had agreed not to pursue inquiry into these matters at trial. (Trial Tr. vol. 1, 3:17-23, Sept. 29, 1997.) The Court then questioned Petitioner regarding this agreement, upon invitation by defense counsel, and Petitioner confirmed his agreement not to allow his attorney to question the complaining witness on these matters at trial. Petitioner further confirmed that he was making this decision "intelligently after consulting with [his] attorney." (Trial Tr. vol. 1, 3:25-6:11.) Petitioner now reverses course, claiming that his attorney did not render effective assistance in advising him to forego examining the complaining witness about her alleged history of sexually assaulting other children. Admitting evidence of the complaining witness's alleged past acts, according to the Petitioner, would have provided the defense with credible evidence of the complaining witness's prior sexual knowledge of molestation and a logical motive to fabricate the allegations against Petitioner.
Petitioner testified at the evidentiary hearing on his application for post-conviction relief that he had been unaware of the content of the police reports and DCYF records that referenced the complaining witness's acts of molestation until trial when his counsel advised him, immediately following jury impanelment, that he did not feel right using this evidence at trial. *Page 27 
While Petitioner conceded that he was advised of the downside of admitting this evidence, namely, that the jury could infer that the complaining witness molested others because she herself had been molested by Petitioner, he nonetheless faulted his defense attorney for agreeing not to use this evidence and characterized his counsel's decision in that regard as "an outright blunder." In his view, the evidence suggested that the complaining witness intuitively or craftily made up the charges against Petitioner and, therefore, counsel's decision to exclude this evidence was unreasonable.
Petitioner further faulted his counsel for suggesting, instead, that the complaining witness had a motive to fabricate the charges because she harbored racial animus toward Petitioner. According to Petitioner, he and the complaining witness did not have any problems because of his race such that he did not think his attorney should have argued otherwise at trial. Petitioner further claimed that, as with the evidence of the victim's alleged prior sexual assaults of other children, he was not aware that his counsel would be making this race argument at trial. The State's position is that defense counsel's decision to forego the use of evidence of the complaining witness's past acts of molestation and instead to use evidence of the complaining witness's racial animus toward the Petitioner to suggest her motive for fabricating the charges was a reasonable tactical decision by defense counsel, especially since questioning the complaining witness regarding her past acts of molestation could have back-fired on Petitioner.
After an examination of the trial record and the evidence before this Court, it is clear, as a threshold matter, that Petitioner's decision to forgo inquiry into the complaining witness's alleged past acts of sexual molestation was intelligent and voluntary, after consultation with his attorney. On September 29, 1997, this Court conducted a pre-trial hearing on the State's motion in limine
to preclude introduction of this evidence. At this hearing, Petitioner testified, under *Page 28 
oath, that he understood that he was waiving his right to introduce evidence of the complaining witness's past acts of molestation. (Trial Tr. vol. 1, 5:9-12.) Further, he testified that no one was forcing him to waive this right and that this was a voluntary decision, made intelligently and after consulting with his attorney. (Trial Tr. vol. 1, 5:22-6:4.) Petitioner also stated that his attorney had provided him with all of his options with respect to this motion and that Petitioner's decision was, consequently, made of his own free will. (Trial Tr. vol. 1, 6:5-11.) Petitioner was free to inform this Court, at the pre-trial hearing, if he disagreed with his counsel's advice or believed that he was being forced to make this decision, but at no point did he do so.
As a result, this Court is satisfied, notwithstanding Petitioner's protestations to the contrary in connection with his application for post-conviction relief, that his decision at trial to waive his right to introduce evidence against the complaining witness as to her alleged prior sexual assaults was an informed and intelligent one, made after consulting with his attorney. While now, after being convicted, Petitioner may harbor second thoughts regarding this strategic trial decision to which he consented, this Court cannot accept that his decision at the time was uninformed, uncounseled or involuntary.
Moreover, defense counsel's tactical decision not to use evidence of the complaining witness's alleged past acts of sexual molestation against other younger children at trial was objectively reasonable.See Strickland 466 U.S. at 688. Where a court "can conceive of a reasonable motivation for counsel's actions, [it] will deny a claim of ineffective assistance." Gordon,518 F.3d at 1302. Here, this Court can conceive of a rational basis for defense counsel's decision to forego inquiry into the complaining witness's alleged past acts of sexual molestation — namely, that introduction of such evidence, even if credited, could lead the jury to infer that the complaining witness only engaged in such acts after the Defendant victimized her *Page 29 
in a similar fashion. In addition, counsel might have been concerned that the jury would perceive the Defendant's use of the evidence not as a legitimate effort to undermine the complaining witness's credibility or to show her sexual knowledge but as an attempt to demonize or re-victimize her.[8]
As to the issue of racial animus, this Court is not convinced, as a threshold matter, that this aspect of Petitioner's defense was the brainchild of his prior counsel. Even if it were, this Court is not convinced that it was a tactical decision at trial to which Petitioner failed to consent.
Moreover, even assuming, as Petitioner claimed at the post-conviction relief hearing, that he disagreed with his attorney's reliance on this race argument at trial, counsel's decision in this regard was not ineffective. InBustamante, the Rhode Island Supreme Court explained that theSixth Amendment does not guarantee the right to counsel "who would blindly follow a defendant's instructions.'"866 A.2d at 524 (quoting State v. Thornton,800 A.2d 1016, 1029 n. 14 (R.I. 2002) (quoting McQueen v.Blackburn, 755 F.2d 1174, 1178 (5th Cir. 1985), cert.denied, 474 U.S. 852 (1985)). The Fifth Circuit summarized the role of defense counsel with respect to a client's views, especially when these differ from those of the attorney:
 A defendant is entitled to counsel capable of rendering competent, meaningful assistance in the preparation and trial of the pending charges, including appropriate evaluation and advice with reference to a plea of guilty. A defendant is not entitled to an attorney who agrees with the defendant's personal view of the prevailing law or the equities of the prosecutor's case. A defendant is entitled to an attorney who will consider the defendant's views and seek to accommodate all reasonable requests with respect to trial preparation and trial tactics. A defendant is entitled to appointment of an attorney with whom he can communicate reasonably, but has no right to an attorney who will docilely do as he is told. Every defendant is entitled to the assistance of counsel *Page 30 
dedicated to the proposition, and capable of assuring that, the prosecution's case shall be presented in conformity with the Constitution, rules of evidence and all other controlling rules and practices. No defendant has a right to more.
United States v. Moore,706 F.2d 538, 540 (5th Cir. 1983) (emphasis added).
It is all too easy for an accused to allege ineffective assistance after a particular tactic proves unsuccessful at trial or a conviction is obtained. See Strickland 466 U.S. at 689. But our Supreme Court has made clear that, "a choice between trial tactics, which appears unwise only in hindsight, does not constitute constitutionally-deficient representation under the reasonably competent assistance standard." D'Alo,477 A.2d at 92 (internal quotation omitted) (emphasis added). Defense counsel's argument of racial animus at trial, therefore, even if not Petitioner's idea or launched without his consent, cannot be said to be so tactically unwise as to be objectively unreasonable.
Furthermore, Petitioner has failed to show how the exclusion of evidence of the complaining witness's alleged prior sexual assaults and reference to her alleged racial animus against him by his attorney, even if reflective of error, was "so prejudicial to the defense and the error[] [was] so serious as to amount to a deprivation of [his right] to a fair trial." Brennan,764 A.2d at 171. In Toole, the defendant was convicted on various sexual assault charges and appealed on the ground of ineffective assistance of counsel. 748 A.2d at 806. The Court rejected his claim that the failure of his attorney to call the complaining witness's pediatrician as a witness — whose testimony would have been that he did not find any physical evidence of sexual abuse during his medical examinations of the complaining witness — constituted ineffective assistance. Id. at 809. The Court was persuaded that this testimony, even if admitted, would not have made a difference to the defendant's case because the prosecution had produced substantial evidence of the defendant's guilt at trial, including testimony of the *Page 31 
complaining witness's brothers and incriminating letters written by the defendant to the complaining witness. Id. at 810.
Just as in Toole, the prosecution here produced the testimony of others to corroborate the complaining witness's allegations, including her mother and friend. The prosecution also proffered Petitioner's own incriminating admissions, not only those contained in his suicide note but also those he made the night before his suicide attempt when the complaining witness's mother confronted him. Given the other substantial evidence produced at trial, therefore, defense counsel's failure to introduce evidence of the complaining witness's alleged past acts of sexual assault and reference to her alleged racial animus toward Petitioner, even if in error, did not prejudice Petitioner.
 2. Failure to Object to Suicide Evidence
Petitioner next contends that defense counsel's failure to object to the testimony of Trooper Pennington concerning Petitioner's suicide attempt and the State's attempt to introduce Petitioner's suicide note that the police found in his car constituted ineffective assistance of counsel. Petitioner argues that evidence of his suicide attempt could not show consciousness of guilt. Specifically, Petitioner claims that his suicide attempt occurred years after the alleged acts of molestation, thereby increasing the possibility of other reasons behind the attempt, including Petitioner's bereavement over the deaths of his family members. Petitioner relies on cases dealing with flight as evidence of consciousness of guilt to support his contentions. SeeState v. Reyes, 705 A.2d 1375 (R.I. 1998); State v.Brown, 528 A.2d 1098 (R.I. 1987); State v. Cooke,479 A.2d 727 (R.I. 1984).
The State counters that even if defense counsel had objected to the admission of this testimony and evidence, the objection would have been overruled because the testimony of the *Page 32 
officer and the suicide note were relevant and admissible as admissions of Petitioner at trial. According to the State, the relevance of this evidence to establish Petitioner's consciousness of guilt is established by the circumstances surrounding Petitioner's suicide attempt — namely, that the complaining witness's mother confronted Petitioner about her daughter's charges of molestation just prior to his suicide attempt, Petitioner made incriminating comments in response to her allegations, and Petitioner threatened the complaining witness on several occasions that he would kill himself if she disclosed the molestation.
As a general rule, "[e]vidence that the accused attempted to commit suicide is relevant as a circumstance tending . . . to show consciousness of guilt," 1 Wharton's CriminalEvidence § 159 (14th ed. 1985), or as showing "an attempt to flee and escape forever from the temporal consequences of one's misdeed[s]." 2 Wigmore onEvidence § 276, at 131 (Chadbourn rev. 1979). When faced with this issue, courts of other states generally have allowed evidence of a suicide attempt to be presented to the jury for whatever weight it chooses to assign it.[9]
In the case at bar, while Petitioner's suicide attempt may have occurred years after his acts of molestation, the attempt occurred only hours after the complaining witness disclosed the abuse to her mother and her mother confronted Petitioner for the first time with the allegations. The record indicates that the complaining witness's mother went to Petitioner's home and *Page 33 
confronted him with her daughter's allegations on the night of July 7, 1996 and that Petitioner attempted suicide during the early morning hours of July 8, 1996. (Trial Tr. vol. 1, 106:22-110:21, 333:3-34:19, Sept. 29, 1997.) It is true that in cases where flight is offered as evidence of consciousness of guilt and the time between an accused's flight and the crime allegedly committed is immediate, the probative value of the flight is much greater than if the flight occurs much later. SeeCooke, 479 A.2d at 733. In this case, however, it was not Petitioner's commission of the crimes that arguably triggered Petitioner's suicide attempt, but rather the later disclosure by the complaining witness of those crimes to her mother, her mother's confrontation of Petitioner that followed, and the harsh reality of being discovered that supported an inference of Petitioner's consciousness of guilt at trial. That inference was further supported by the threats Petitioner made to the complaining witness that he would kill himself if she disclosed the molestation. (Trial Tr. vol. 1, 40:2-8, Sept. 29, 1997.)
Hence, the evidence of Petitioner's suicide attempt and his suicide note were clearly relevant, probative, and properly admissible to support an inference of consciousness of guilt. As such, defense counsel's failure to object to the admission of that evidence cannot be said to have been objectively unreasonable.
In addition, defense counsel likely was aware of the relevance and probative value of such evidence as it related to the sequence of events and Petitioner's state of mind as well as to the futility of objecting to its admission. Such an objection, if asserted, could have carried the risk of unduly highlighting the evidence.See Chandler, 848 So.2d at 1045 (explaining that the decision not to object to an otherwise objectionable remark may, at times, be made for strategic reasons). He also likely was aware that once admitted, it would be for the jury to decide what, if any, weight to assign the evidence concerning Petitioner's suicide attempt. See Aldridge, 229 Ga. App. at 545. *Page 34 
Further, defense counsel, before his closing statement, questioned Petitioner about his depression over his family members' deaths and the reasons for his suicide attempt. (Trial Tr. vol. 1, 321-23, Sept. 29, 1997.) He then presented this explanation for Petitioner's suicide attempt to the jury during his closing statement. (Trial Tr. vol. 2, 439-42, Oct. 3, 1997);see also Commonwealth v. Knap,412 Mass. 712, 716-717 (1992) ("[C]onsciousness of innocence [is] a matter more appropriately left to the defendant's closing argument."). Thus, defense counsel's failure to object to the officer's testimony and the suicide note as evidence of consciousness of guilt and his decision to counter the effect of its admission in his closing statement appears to have been a legitimate choice of trial tactics that cannot be characterized, under the circumstances, as objectively unreasonable or unduly prejudicial.
 3. Failure to Object to State's Closing Statement
In addition, Petitioner contends that defense counsel's failure to object to remarks made by the prosecutor during his closing statement that the suicide note evidenced consciousness of guilt constituted ineffective assistance. Petitioner points to specific comments made by the prosecutor that he argues were particularly harmful: (1) that the note was "an admission of guilt" (Trial Tr. vol. 2, 463:13-14, Oct. 3, 1997); (2) that ". . . the act, itself, attempted suicide, it is consciousness of guilt on his part" (Trial Tr. vol. 2, 464:5-6); and (3) "[Petitioner] won't admit it. Why? Why? Is he lying to you because he has got something to hide." (Trial Tr. vol. 2, 462:8-9.) In addition, Petitioner argues that it was wrong for the prosecutor to have told the jury, on more than one occasion, that he believed that the Petitioner was a liar and that the complaining witness was honest. As defense counsel had failed to impeach the complaining witness with any inconsistent statements, Petitioner further asserted that it was inappropriate and unnecessary for the prosecutor to vouch for her credibility. Petitioner also criticized his attorney for failing to *Page 35 
object to the prosecutor's improper comments in his closing statement. Still further, Petitioner takes issue with the prosecutor's reference to information known to him but not to the jury, namely consistent statements made by the complaining witness that were not introduced at trial. (Trial Tr. vol. 2, 451: 2-5.) Yet, Petitioner argues, defense counsel made no objection to any of these remarks nor did he request a cautionary jury instruction.[10]
The State counters that references made by the prosecutor to Petitioner as a liar and to his consciousness of guilt fell within the realm of fair and reasonable argument based on inferences drawn from the evidence. In its memorandum, the State further disputes that the prosecutor's comments in his closing statement amounted to impermissible vouching. While the State admits that the prosecutor made a comment in his closing statement concerning his knowledge of consistent statements made by the complaining witness to which the jury was not privy, (Trial Tr. vol. 2, 451:2-5), it claims that defense counsel was not legally obligated to object to this statement nor was the statement egregious. The State also maintains that the trial justice gave an appropriate instruction to prevent the jurors from placing undue emphasis on any personal opinions expressed by counsel during closing statements.
It is well settled that a prosecutor is allowed wide latitude in arguing the State's case. State v. Conway,463 A.2d 1319, 1324 (R.I. 1983). The prosecutor's comments, however, must be based on the evidence presented at trial, State v.Boillard, 789 A.2d 881, 885 (R.I. 2002), but as long as they are, the prosecutor (as well as defense counsel) may generally "argue emotionally and vividly . . . using terms that might be thought melodramatic or theatrical." People v. Ochoa, *Page 36 
19 Cal. 4th 353, 463 (1998). Nonetheless, our Supreme Court does not condone "tactics that serve to demonize a particular defendant." State v. Horton, 871 A.2d 959, 965 (R.I. 2005);see also State v. Mead,544 A.2d 1146, 1150 (R.I. 1988) ("A criminal trial cannot be allowed to become like a day at a Roman Coliseum when an individual's fate was determined by the cheers or jeers of the crowd.").
In State v. Collazo, the Rhode Island Supreme Court explained the role of the trial justice in deciding when counsel has crossed the line in argument and prejudice has resulted:
 Determination of whether a challenged remark is harmful or prejudicial cannot be decided by any fixed rule of law. . . . Rather, the justice must evaluate its probable effect on the outcome of the case by examining the remark in its factual context. . . . Prejudice clearly inheres if the challenged comments "are totally extraneous to the issues in the case and tend to inflame and arouse the passions of the jury" against the defendant.
446 A.2d 1006, 1010 (R.I. 1982) (quoting State v. Mancini,108 R.I. 261, 273-74, 274 A.2d, 742, 748 (1971)). The Court added that "reversible error occurs if the allegedly improper comment was so flagrantly impermissible that even a cautionary instruction would have been insufficient to dispel the prejudice in the jurors' minds and to assure defendant a fair and impartial trial."Id. at 1010.
Mindful of these precepts, this Court cannot say that defense counsel's failure to object to the prosecutor's remarks in his closing statement that Petitioner's suicide note was evidence of consciousness of guilt constituted deficient performance that prejudiced him. As discussed previously, evidence of Petitioner's suicide attempt was relevant and properly admissible as evidence of Petitioner's consciousness of guilt. As such, the prosecutor's references to this evidence in his closing statement did not exceed the proper bounds of argument, seeBoillard, 789 A.2d at 885, nor were the prosecutor's remarks "totally extraneous *Page 37 
to the issues in the case." Id.; Thomas, 2 Cal. 4th at 529. Indeed, defense counsel chose tactfully to argue in his closing statement that Petitioner's suicide attempt had nothing to do with the molestation charges but instead was a product of his grieving over the deaths of his family members. Consequently, defense counsel's decision not to object to these references cannot be said to be objectively unreasonable nor has Petitioner demonstrated any prejudice resulting from this decision.
Petitioner also faults his defense counsel for failing to object to the prosecutor's repeated references to Petitioner as a liar in his closing statement to the jury. Petitioner refers to several instances where the prosecutor called him a liar and to which defense counsel failed to object: (1) with regard to Petitioner's testimony that he put lotion on the complaining witness in front of her mother, the prosecutor remarked "he lied to you" (Trial Tr. vol. 2, 454:1-11); (2) regarding Petitioner's testimony that his depression was the reason for his suicide attempt, the prosecutor said "[h]e lied to you" (Trial Tr. vol. 2, 462:18-463:4); concerning Petitioner's testimony that he did not molest the complaining witness, the prosecutor stated "[h]e is lying about committing the act. He committed it because if he lies about everything else, chances are he is lying about that" (Trial Tr. vol. 2, 465:1-3); regarding Petitioner's testimony that he confronted the complaining witness's mother, the prosecutor said "Clearly, he lied to you about it" (Trial Tr. vol. 2, 466:21-467:9); regarding Petitioner's testimony with respect to his schedule, the prosecutor stated "But then after looking into it, I figured out he is lying. . . . So, he lied again" (Trial Tr. vol. 2, 467: 10-24); with respect to Petitioner's testimony regarding the manager of the restaurant where the complaining witness's mother worked, the prosecutor again stated "[h]e lied to you. Another lie" (Trial Tr. vol. 2, 468:4-21); and concerning Petitioner's testimony about his bowling *Page 38 
schedule during the week, the prosecutor interjected "[h]e lied to you about that" (Trial Tr. vol. 2, 469:3-11).
This Court certainly does not condone the prosecutor's references in his closing statement to Petitioner as a liar, as they were impermissible opinion statements of the prosecutor, could imply special knowledge on the part of the State, usurped the jury's role in determining credibility and were highlighted through repetition.See Brown, 964 A.2d at 528. Nonetheless, Petitioner has not satisfied this Court that the failure of his defense counsel to object to these statements by the prosecutor constituted a constitutionally deficient performance that was unduly prejudicial to him at trial.
Petitioner put his own character and credibility at issue by testifying, and the Prosecutor's closing remarks that suggest that he could be a liar attempted to rebut his testimony.[11] The credibility of Petitioner's testimony was an issue to be decided by the jury. While the decision not to object may, at times, be "fraught with danger and may not be wise strategy," seeChandler, 848 So.2d at 1045, in some circumstances a decision not to object to otherwise objectionable remarks may be made for strategic reasons. Id.[12] In Chandler, trial counsel explained that his decision not to object to every improper comment made by the prosecutor was, in fact, strategic.Id. at 1045 n. 20. He also stated that: *Page 39 
 he "had established a pretty good rapport with the jury during the closing argument." Trial counsel also stated, "in general I don't like to jump up all the time anyway. I think it looks bad in front of the jury when you're continually jumping up and interrupting the other side's closing argument." Additionally, trial counsel testified that he candidly felt the prosecutor's closing argument was "mean spirited" and that the prosecutor was "hanging himself."
Id. Here, defense counsel, deceased after trial, was not here to testify as to his reasons, if any, for choosing not to object. In light of the high degree of deference that the courts should employ when evaluating counsel's performance, seeStrickland, 466 U.S. at 689, Petitioner has not established that defense counsel's failure to object to these remarks or request a cautionary instruction was objectively unreasonable.
More importantly, even if the prosecution's repeated characterization of defendant as a liar was out of line and if defense counsel should have objected to the prosecutor's closing statements and requested a cautionary instruction, Petitioner has not shown how defense counsel's failure to do so substantially prejudiced him. In Horton, our Supreme Court held that the prosecutor's characterization of the defendant as a "monster," although inappropriate, did not constitute harmful error in light of the evidence of the defendant's guilt and the instructions given by the trial justice that any statements made by counsel during closing arguments are not evidence. Id. at 965-66.[13] Similarly, inState v. Simpson, 658 A.2d 522, 528 (R.I. 1995), the *Page 40 
Supreme Court held that the prosecutor calling the defendant "scum" was inappropriate but harmless.
As in those cases, even if the prosecutor's references to Petitioner here as a liar were objectionably unreasonable, this Court is not convinced that the verdict would have been different had defense counsel interposed those objections. After all, the trial justice instructed the jury that the statements of counsel are not evidence and that opinions of counsel expressed during trial or in their closing statements are improper and should be disregarded. In addition, the jury had before it the testimony of Petitioner, as weighed against that of the complaining witness herself, the corroborating testimony of the complaining witness's mother and friend, and evidence of the Petitioner's suicide attempt that was reflective of his consciousness of guilt — evidence which carried sufficient force to convict the Petitioner beyond a reasonable doubt.
With regard to the issue of vouching, our Supreme Court has stated that "[i]t is improper for the prosecution to vouch for the credibility of a government witness." State v. Chakouian,537 A.2d 409, 412 (R.I. 1988) (quoting United States v.Roberts, 618 F.2d 530, 533 (9th Cir. 1980)). The Fifth Circuit Court of Appeals has declared that "[a]ttempts to bolster a witness by vouching for his credibility are normally improper and error." United States v. Ellis,547 F.2d 863, 869 (5th Cir. 1977). Vouching occurs when the State "insinuates that it has `special knowledge' that its witness is testifying truthfully." Chakouian,537 A.2d at 412 (internal citations omitted).[14] Vouching also may occur if the prosecution "place[s] the prestige of the government behind the witness. . . ." Roberts,618 F.2d at 533; United States v. Martin,815 F.2d 818, 823 (1st Cir. 1987). *Page 41 
In his closing statement in this case, the prosecutor referred, without objection, to the complaining witness's testimony as "honest and forthright." (Trial Tr. vol. 2, 448:17-18; 450:21-22, Oct. 3, 1997.) In another instance, the prosecutor said of the complaining witness, "[w]hen she testified, did she look like she was telling the truth? I thought she did. I thought she came up very honest. She was very forthright." (Trial Tr. vol. 2, 450: 19-22.) Still further, with respect to the complaining witness, he said that there was no evidence that her mother was telling her what to say "[b]ecause the young girl is telling the truth." (Trial Tr. vol. 2, 457:2-5.) With reference to the testimony of Doug Arling, the boyfriend of the complaining witness's mother, the prosecutor stated "[h]ow credible is that? It is pretty credible." (Trial Tr. vol. 2, 460:4-19.) The prosecutor also said the complaining witness's mother had no reason to lie "because she is telling the truth." (Trial Tr. vol. 2, 470:18-19.)
In each of these incidents, the prosecutor was rebutting attacks made on these same witnesses by defense counsel in his closing arguments. (Trial Tr. vol. 2, 421-25, 431-33.) For example, defense counsel attacked the complaining witness's credibility by suggesting that her animosity toward Petitioner on account of his race motivated her to fabricate the molestation allegations. (Trial Tr. vol. 2, 421-23.) Defense counsel also attacked the credibility of the complaining witness's mother by pointing out inconsistencies in her testimony and by submitting that she was a scorned woman with a motive to fabricate the charges in retaliation against Petitioner for leaving her. (Trial Tr. vol. 2, 423-25, 432-33.) Further, defense counsel attacked Doug Arling's credibility by suggesting that his relationship with the complaining witness's mother biased him. (Trial Tr. vol. 2, 431.) As such, the prosecutor's comments were an attempt to meet the statements as to witness credibility made by defense counsel in his closing statement. SeeRogers, 957 So.2d at 548. Defense counsel's decision not to object to the prosecutor's *Page 42 
closing remarks may well have been strategic. SeeChandler, 848 So.2d at 1045. While this Court cannot condone such vouching by the prosecutor as to the credibility of the complaining witness, particularly when it was married with his statements of opinion as to the Petitioner's lack of credibility, it cannot say — for the reasons discussed previously — that defense counsel's failure to object to that vouching was constitutionally deficient or so prejudiced the Petitioner that it rendered the verdict in his trial unreliable.See Simpson, 769 A.2d at 1266.
With regard to the prosecutor's reference in his closing statement to information and statements made by the complaining witness that were known to him but were not part of the evidence before the jury, this Court agrees that this comment, too, was improper.See Roberts, 618 F.2d at 533; Chakouian,537 A.2d at 412.[15] However, it becomes unnecessary for this Court to address the deficient performance prong underStrickland, as it pertains to this remark, because it is clear that Petitioner has not established any prejudice as a result of defense counsel's failure to object. 466 U.S. at 697. The prosecutor's remark was brief and isolated, and came after the jury had already heard an abundance of evidence regarding Petitioner's guilt, including the testimony of several corroborating witnesses. The strong and overwhelming evidence inculpating Petitioner and supporting the jury's verdict strengthens the conclusion that this "single and unobjected-to argument" did not constitute "fundamental error" and, thus, defense counsel's failure to object to that comment did not prejudice Petitioner or the outcome of his trial. See Rogers, 957 So.2d at 550. As the Court inChandler articulated, "[i]n order for an error to be fundamental . . . [it] `must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" *Page 43 848 So.2d at 1045 (quoting Brown v. State,124 So.2d 481, 484 (Fla. 1960)).[16] Although the prosecutor's comment in his closing statement may have been ill-advised or improper, it cannot be held that defense counsel's failure to object to this remark prejudiced the outcome of the case so as to warrant a reversal of Petitioner's conviction.
Furthermore, as noted previously, this Court cautioned the jurors, immediately before closing arguments, that the statements of counsel during the trial or in final argument are not evidence and are not to be considered by the jurors as evidence during their deliberations. (Trial Tr. vol. 2, 485:24-486:3, Oct. 3, 1997.) In addition, the jury was admonished in the Court's final charge to consider only the evidence presented before it in reaching their verdict. (Trial Tr. vol. 2, 473:15-23.) Moreover, even if a curative instruction were necessary to inform the jury that the prosecutor's statements were improper, and even if defense counsel was deficient in failing to request this specific instruction, this Court is not satisfied that this failure was so prejudicial to Petitioner as to undermine the validity of the trial and the verdict reached.See Chandler, 848 So.2d at 1045; Kellogg,176 F.3d at 452. Petitioner's trial testimony was replete with inconsistencies, and the testimony of various other witnesses served to corroborate the complaining witness's allegations. While a curative instruction may have been helpful to the jury, Petitioner has failed to show how defense counsel's failure to object to the instructions provided was so prejudicial as to render the "entire trial [and verdict] fundamentally unfair." Kellogg,176 F.3d at 452. Consequently, this Court finds that its instructions were adequate to counter any prejudicial effect of the prosecutor's statements in his closing. Further, if the State committed any error by those statements, it was harmless.See State v. Pelliccia, 573 A.2d 682, 686-87 (R.I. 1990) (citing State v. DeCiantis, 501 A.2d 365 (R.I. 1985)). *Page 44 
 C. Defense Counsel's Failure to Preserve Objections forAppeal
Petitioner also contends that defense counsel was deficient in failing to preserve objections to several of the trial justice's evidentiary rulings for appeal: (1) the trial justice sustained objections by the State to defense counsel's cross-examination of the complaining witness's mother that would have revealed the complaining witness's bias toward Petitioner because of his race; (2) the trial justice sustained objections by the State to defense counsel's attempt to elicit testimony regarding Petitioner's proclaimed reasons for attempting suicide; and (3) the trial justice sustained objections by the State to statements made by Petitioner to his ex-wife indicating that his suicide attempt was the result of pre-existing depression rather than consciousness of guilt. The State counters that the Supreme Court already rejected these arguments in Petitioner's direct appeal. See Hazard,785 A.2d at 1116. This Court will examine these issues inseriatim, in light of the Supreme Court's earlier decision, to determine if the Court rejected Petitioner's arguments previously in ruling against him on appeal.
1. Exclusion of Evidence of Complaining Witness's RacialBias
During defense counsel's cross-examination of the complaining witness's mother at trial, this Court sustained several objections by the State regarding the complaining witness's potential bias against Petitioner on account of his race. The basis for Petitioner's ineffective assistance claim is that defense counsel never preserved this issue for appeal by indicating to this Court at trial the factual and legal purpose for which he sought admission of the hearsay statements made in response to those questions. Petitioner further argues that defense counsel did not make any offer of proof, never asked the Court to allow him to conduct voir dire of the witnesses outside the presence of the jury, never offered any hearsay exception, and failed to petition the Court to reconsider its ruling. Consequently, the Supreme Court ruled in the direct appeal that counsel's *Page 45 
"failure to make an argument to a trial justice waives the right to raise that argument on appeal." State v. Hazard,785 A.2d at 1115.
In its ruling, our Supreme Court explained that, although an exception exists to the "raise-or-waive" rule for issues implicating constitutional concerns where the defendant can show that counsel's error(s) was more than harmless, there was no such showing here. 785 A.2d at 1116. The Court was persuaded that, even if the trial justice erred in sustaining the State's objections, this error was harmless beyond a reasonable doubt. Id. The record makes clear that defense counsel had an opportunity to elicit ample testimony from both the complaining witness and her mother regarding racial bias and was able to develop this argument even further during his closing statement. Id. at 1116-17. Thus, the Court concluded, "the additional corroboration sought from the complaining witness's mother [which was objected to by the State and sustained by the trial justice] was merely cumulative because it would have added little or nothing to the mix of information that the jury ultimately received on this subject." Id. at 1117.
In light of the Supreme Court's decision on this issue, it cannot be said that defense counsel was ineffective in failing to preserve this evidentiary ruling for appeal. It likewise cannot be said that Petitioner was prejudiced by his failure to do so.
2. Exclusion of Evidence of Petitioner's Statements to TrooperPennington about his Suicide Attempt
During cross-examination of Trooper Pennington, the officer who found Petitioner at the cemetery after his suicide attempt, defense counsel sought to elicit testimony regarding statements made by Petitioner to the officer that would have shed light on his reasons for attempting suicide. This Court sustained the Prosecutor's objections to these questions on the basis of the rule articulated in State v. Harnois, 638 A.2d 532 (R.I. 1994) (non-testifying defendant cannot introduce statements he made to investigating police officers at trial as *Page 46 
admissions or catchall exception to hearsay rules). Petitioner contends that defense counsel's failure to preserve this issue for appeal by not alerting this Court to the applicable hearsay exception or making any offer of proof constituted ineffective assistance.
The Supreme Court addressed this evidentiary issue as well on direct appeal in State v. Hazard, indicating that the statements Petitioner sought to elicit were inadmissible under any of the hearsay exceptions upon which he relied. 785 A.2d at 1118-19. Regardless of the applicability of any hearsay exception, the Court explained that the rule articulated in State v. Harnois still barred the admission of statements of this sort into evidence.Id. at 1119 (citing Harnois, 638 A.2d at 535). The Court made clear again that even if this Court had erroneously excluded Petitioner's statements, any error was harmless beyond a reasonable doubt. Id. Petitioner had a chance to testify as to the source of his bereavement and the reason for his suicide attempt, and defense counsel was able to highlight this testimony during closing argument. Defense counsel even called Petitioner's ex-wife to testify in his defense on this issue. Thus, even if Petitioner's statements to the officer at the cemetery had been admitted at trial, the essential issue would have remained — largely dependent on the Petitioner's own credibility — of whether his suicide attempt was due to his consciousness of guilt or bereavement over his family members' deaths. The question of Petitioner's credibility on this issue was appropriately submitted to the jury. As a result, defense counsel's performance in failing to preserve this issue for appeal was not deficient. Moreover, as the Supreme Court stated, Petitioner has "failed to cite any prejudice from excluding the evidence of what he may have said at the gravesite to the state trooper."Id. at 1119-20. Hence, Petitioner's ineffective assistance claim premised on this evidentiary issue also must fail. *Page 47 
 3. Exclusion of Evidence of Petitioner's Statements to hisEx-wife about his Suicide Attempt
As part of his examination of Petitioner's ex-wife, defense counsel attempted to elicit testimony from her that months before the complaining witness's mother confronted Petitioner with the molestation allegations, he already had planned for his own burial. Petitioner contends that this evidence was relevant and critical to weaken the State's claim that Petitioner's suicide was the result of consciousness of guilt as opposed to pre-existing depression. Yet, here, too, the trial justice sustained the prosecutor's objections and defense counsel again did not preserve this issue for appeal by articulating a theory of admissibility.
Regarding this final ground for Petitioner's ineffective assistance claim, this Court again cites to the Supreme Court's opinion for its ruling on this issue. State v. Hazard,785 A.2d at 1121. The Supreme Court noted that Petitioner's ex-wife had an opportunity to testify as to Petitioner's devastation over the deaths of his parents and sister, that Petitioner spoke of suicide in her presence, and that she believed that he viewed his own death as imminent. Further, defense counsel was able to admit as evidence the funeral bill that reflected Petitioner's arrangement for his own burial. Thus, with respect to any excluded statements made by Petitioner's ex-wife, defense counsel cannot be faulted for not having preserved this issue for appeal. Clearly, as the Supreme Court's analysis demonstrates, this evidence only would have been cumulative and, therefore, any error in its exclusion would have been harmless. Id. at 1121. Hence, this Court holds that, with respect to Petitioner's final ground for his ineffective assistance of counsel claim, defense counsel was not deficient in failing to preserve this issue for appeal. In addition, for the reasons previously outlined, any alleged error was not prejudicial. *Page 48 
 CONCLUSION
For all the reasons stated in this Decision, this Court denies Petitioner's petition for post-conviction relief in its entirety. While this Court has analyzed individually each alleged error on the part of trial counsel, its conclusion is unaltered even if these purported errors are aggregated. Petitioner simply has failed to demonstrate how counsel's alleged errors, whether viewed individually or collectively, see Brown,964 A.2d at 528-529, prejudiced him to the extent that the validity of his trial and conviction have been called into question.Chandler, 848 So.2d at 1045; Kellogg, 176 F.3d at 452.
Counsel are directed to confer and to submit to this Court forthwith for entry an agreed upon form of order and judgment that are consistent this Decision.
[1] Section 5-37.3-6(b)(1) states:
 (b) The exemption from compulsory legal process and the privilege provided in subsection (a) of this section does not apply: (1) When an individual introduces his or her physical or mental condition, including, but not limited to, any allegation of mental anguish, mental suffering or similar condition, as an element of his or her claim or defense; provided, that a claim for damages or other relief for "pain and suffering" based solely on one's physical condition shall not be deemed to constitute the introduction of one's mental condition into issue and the exemption and privilege applies in that situation only to those portions of one's confidential health care information relating to mental condition.
Section 5-37.3-6.1(a) states:
 Except as provided in § 5-37.3-6, a health care provider or custodian of health care information may disclose confidential health care information in a judicial proceeding if the disclosure is pursuant to a subpoena and the provider or custodian is provided written certification by the party issuing the subpoena that: (1) A copy of the subpoena has been served by the party on the individual whose records are being sought on or before the date the subpoena was served, together with a notice of the individual's right to challenge the subpoena; or, if the individual cannot be located within this jurisdiction, that an affidavit of that fact is provided; and (2) Twenty (20) days have passed from the date of service on the individual and within that time period the individual has not initiated a challenge; or (3) Disclosure is ordered by a court after challenge.
[2] The text of Rule 1.6 reads as follows:
 (a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).
 (b) A lawyer may, but is not obligated to, reveal such information to the extent the lawyer reasonably believes necessary:
 (1) to prevent the client from committing a criminal act that the lawyer believes is likely to result in imminent death or substantial bodily harm; or
 (2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client.
[3] Petitioner did not produce or seek to admit the release form into evidence before this Court, but it was the subject of testimony at the evidentiary hearing.
[4] Rule 16(b) states:
 A defendant who seeks any discovery under subdivision (a) of this rule shall permit the State, upon receipt of written request, to inspect or listen to and copy or photograph any of the following items within the possession, custody or control of the defendant or the defendant's attorney: . . .
(emphasis added). Section (f) provides that a party may seek a protective order from the court denying, restricting, or deferring a discovery or inspection request sought pursuant to Rule 16.
[5] The State suggests that, even if Petitioner was not aware of the content of his psychiatric records and did not authorize their disclosure to it, Petitioner put his mental condition in issue on direct examination. As a result, the State claims that it would have been legally entitled to request a subpoena from the trial justice for Petitioner's mental health counseling records pursuant to the Health Care Confidentiality Act. Section 5-37.3-6.1(a).
Before disclosure of confidential health care information will be ordered pursuant to a subpoena, however, the Act provides that the privilege holder must receive notice of the subpoena, have an opportunity to review the information in the records subject to the subpoena, have the right to challenge the requested disclosure and, if necessary, to "request possible protective limitations from the court on the nature and extent of the requested disclosure and use of these records. . . ." Id. § 5-37.3-6(a)(1);Washburn v. Rite Aid Corp., 695 A.2d 495, 498 (R.I. 1997). Thus, even if the State had subpoenaed Petitioner's mental health counseling records, the Health Care Confidentiality Act ensures that their disclosure would not have occurred without compliance with its procedural safeguards. Petitioner would have been entitled, therefore, to notice, review of the records, and the opportunity to challenge their disclosure in court. Thus, the State's reliance on the Act would not have guaranteed the court ordered release of all of the Petitioner's psychiatric records, particularly where the record at issue had no nexus to his defense.
[6] See State v. Ucero, 450 A.2d 809, 815 (R.I. 1982);see also Parker v. Town of Swansea,310 F.Supp.2d 356, 373-74 (D. Mass. 2004) (concluding that admission of defendant's mental health records was not prejudicial since the records had been redacted to remove highly inflammatory information not related to the lawsuit, and the court also had issued a limiting instruction to the jury with respect to the content of those mental health records).
[7] It is noteworthy that a divided Rhode Island Supreme Court affirmed Brown's conviction on direct appeal — with the majority finding that it was unable to reach the clergy privilege issue because of counsel's failure to object — and that the trial justice thereafter granted post-conviction relief, finding that failure to object to be constitutionally deficient and prejudicial underStrickland. In reversing the grant of post-conviction relief on appeal, the Supreme Court thus set the bar extraordinarily high for establishing prejudice under Strickland.
[8] Cf. Lyons v. State, 880 A.2d 839, 841 (R.I. 2005) (denying petitioner's claim that defense counsel's failure to subpoena complaining witness's medical records constituted ineffective assistance of counsel on the ground that counsel was concerned lest those medical records contain information that might be harmful to his client's case.)
[9] See, e.g., Commonwealth. v. Sheriff,425 Mass. 186, 199 (1997) (ruling that evidence of defendant's attempted suicide was admissible as evidence of consciousness of guilt even though the defendant was able to present plausible alternative explanations for his conduct); State v.Mann, 132 N.J. 410, 421 (1993) (holding that, like evidence of flight, evidence of a defendant's suicide attempt following the alleged commission of an offense is generally admitted);State v. Mitchell, 450 N.W.2d 828, 831-32 (Iowa 1990) (finding that admission of evidence of suicide attempt after arrest did not constitute abuse of discretion); State v. Hunt,305 N.C. 238, 247 (1982) (deciding that defendant's flight and attempted suicide in jail constituted "implied admissions of guilt"); Aldridge v. State,229 Ga. App. 544, 545 (Ga. App. 1997) (concluding that evidence of attempted suicide by the accused "where such person is, at the time or thereafter, charged with or suspected of a crime," is relevant as possibly indicating a consciousness of guilt and admissible for whatever weight the jury chooses to assign it) (quoting Bridges v. State, 246 Ga. 323, 324 (1980));Harper v. State, 930 S.W.2d 625, 630 (Tex. App. 1996) (holding that evidence of flight and attempted suicide were properly admitted).
[10] In Petitioner's memorandum in support of his application for post-conviction relief, he acknowledges that the trial justice provided the following standard instruction during her jury charge: "Remarks or statements or personal opinions expressed by counsel during the trial or in final argument to you, are not evidence again and are not to be considered by you as evidence during the course of your deliberations." (Trial Tr. vol. 2, 485:24-486:3.) He argues, however, that this instruction was insufficient to cure the harm caused by the prosecutor's remarks during his closing statement.
[11] See Rogers v. State,957 So.2d 538, 548 (Fla. 2007) (finding that prosecutorial comments during guilt-phase closing argument, including repeatedly referring to defense counsel's vivid imagination, bolstering the credibility of the State's expert and of the police department, were not improper as they rebutted defense counsel's closing arguments in which he presented theories that were not based on facts in evidence).
[12] In Brown, defense counsel called petitioner's daughter as a witness at trial and she testified that the victim, petitioner's stepdaughter, told her that petitioner had molested her. 964 A.2d at 533-534. The hearing justice said that it was "inconceivable to this Court that any competent counsel would employ such a strategy." Id. The Supreme Court disagreed, stating that, after reviewing the record, it was comfortable that defense counsel's decision to call the petitioner's daughter as a witness was tactical and did not justify a finding of ineffective assistance of counsel. Id. The Court then went on to explain how defense counsel may have attempted to use the petitioner's daughter's testimony to cast doubt on the victim's own credibility.Id. The Court concluded that, even if defense counsel's strategy was ill-advised, it could not be said to have contributed to petitioner's deprivation of his right to effective assistance of counsel. Id. at 534; see also Gordon,518 F.3d at 1302 (where a court "can conceive of a reasonable motivation for counsel's actions, [it] will deny a claim of ineffective assistance.").
[13] See also Kellogg v. Skon,176 F.3d 447, 452 (8th Cir. 1999) (finding that, although references to the defendant by the prosecution during closing argument as a "monster" and "sexual deviant" . . . had "no place in the courtroom," they did not make the trial fundamentally unfair. "The weight of the evidence was heavy, and there [was] no reasonable probability that the verdict would have changed absent the comments, even considering the cumulative effect of the prosecutor's remarks."); State v. Smith,599 N.W.2d 344, 353-55 (S.D. 1999) (concluding that the prosecutor's comments referring to the defendant as a "monster," "sexual predator," and "pervert," although "abhorrent and misconduct," did not rise to a prejudicial level and were held to have been very unlikely to have altered the jury's verdict); State v.Comer, 165 Ariz. 413, 426-27 (1990) (deciding that the prosecutor calling the defendant a "monster," and "filth" during his closing argument "exceeded the bounds of appropriate closing argument . . . [but that] the error was harmless beyond a reasonable doubt. . . . In light of the overwhelming evidence of appellant's guilt, it [was] evident that the prosecutor's comments did not contribute to the verdict.").
[14] See also Lawn v. United States,355 U.S. 339, 359-60 n. 15 (1958) (finding that the government's attorney did not say or insinuate that his closing statement was based on personal knowledge or on anything other than the testimony of those witnesses appearing before the jury and, therefore, it was not improper); Roberts,618 F.2d at 533 (explaining that vouching occurs where the prosecution indicates that information not presented to the jury supports the witnesses' testimony).
[15] In its memorandum, the State concedes that this comment by the prosecutor was improper, but posits that defense counsel was not legally obligated to object to this remark and that the trial justice's instruction to the jury was adequate to cure any arguable error.
[16] See also Kellogg,176 F.3d at 452 (explaining that, in assessing the impropriety of prosecutorial comments, the question is not whether they are "undesirable or even universally condemned," but whether they make the "entire trial fundamentally unfair.").